## Clem McCoy v. The State.

No. 4540. Decided June 20, 1917.

**1.—Local Option—Sufficiency of the Evidence.**

Where, upon trial of a violation of the local option law, the evidence sustained the conviction, there was no reversible error.

**2.—Same—Trial Court—Rule Stated—Question of Fact—Judge.**

Where, upon trial of a violation of the local option law, in the County Court, defendant waived a jury, the trial judge has the same functions as the jury with reference to the credibility of witnesses, the weight to be given their testimony, etc., and, where the evidence was sufficient to sustain the conviction, there was no reversible error.

**3.—Same—Evidence—Bill of Exception—Practice on Appeal.**

Where the bill of exceptions to the objection to testimony was too uncertain and vague to be considered on appeal, there was no reversible error.

Appeal from the County Court of San Augustine. Tried below before the Hon. E. T. Anderson.

Appeal from a conviction of a violation of the local option law; penalty, a fine of fifty dollars and twenty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, Judge.—Appellant was indicted for making an unlawful sale of intoxicating liquor to Fox Canton on or about November 1, 1916, after an election on November 7, 1903, duly putting the law prohibiting the sale of intoxicating liquor in force, making it a misdemeanor.

The case was tried before the judge without a jury. It was admitted that prohibition was in force at the time of said alleged sale.

Said Canton testified: "My name is Fox Canton. I know Clem McCoy. I saw him at his father's home in San Augustine County, Texas, on or about the 1st day of November, A. D. 1916. Harry Hight had given me one dollar to get him some whisky with, and I went to Bill McCoy's home, where Clem McCloy lives, and when I got there Clem McCoy came out of the house and I asked him if he had any whisky, and he replied, I think I can get you some. I gave him the dollar and he went back into the house, and in a short time came back to where I was on the gallery and delivered to me a pint bottle of whisky. I did not see where he got the whisky from. While Clem McCoy was in the house before he brought me the whisky, I looked through the glass of the window from the gallery and the only person I saw in the room was Bill McCoy, father of Clem McCoy and a man by the name of Mr. Jackson, sitting near the fireplace. I was not looking at them all the time while Clem McCoy was in the house after the whisky. There could have been other persons in the room besides Bill McCoy and Mr. Jackson, but if there was I did not see them. I was looking through the window glass from the gallery. If Clem McCoy got the whisky from Mr. Jackson, I did not see him do so. I do not know the given name of Mr. Jackson. I always heard him called Mr. Jackson."

Said Hight testified: "On or about the 1st day of November, A. D. 1916, I gave Fox Canton a dollar in money and told him to get me a pint of whisky. I never knew a negro down in that portion of the country that was called Mr. Jackson, but there could have been such a negro in there without me knowing him."

Mr. R. H. Young testified: "I am agent of the Wells-Fargo Express Company at their station in the town of San Augustine, Texas, and keep a record of all shipments by express of whisky coming into my office, to whom it is shipped and by whom taken out. Referring to my record of express packages I find that during the month of September, A. D. 1916, that C. McCoy received a package labeled three gallons of whisky and that during the month of October, A. D. 1916, Clem McCoy received a package labeled three gallons of whisky." He fur-

ther testified that he thought C. McCoy and Clem McCoy were one and the same person but that he really didn't know.

This evidence was sufficient to sustain appellant's conviction. Appellant introduced Buck Holman and Cleveland Phillips, each of whom testified in substance that they were at the house of Clem McCoy and his father, Bill McCoy, on the day and at the time it was alleged that Clem McCoy sold to Fox Canton a pint of whisky; that it was in the afternoon of Saturday, as well as they remembered when Canton came to McCoy's house on said occasion; that they, said Bill McCoy and the negro whom they knew as "Mr. Jackson," were inside of the house sitting around near the fireplace; that Clem McCoy went out on the gallery after Canton had called him and in a few minutes came back into the room where they all were and went over to where Mr. Jackson was sitting and said something to Mr. Jackson in a low tone of voice or a kind of a whisper; they could not tell what he was saying, but heard Harry Hight's name mentioned and that Clem McCoy said that "he is all right." That then the man they knew as Mr. Jackson reached down and opened the satchel or grip that was near him and took out a pint bottle of whisky and gave it to Clem McCoy and Clem McCoy gave Mr. Jackson a dollar and then went out on the gallery where Canton was, with the whisky; they they could see over into Mr. Jackson's satchel when he got the said pint bottle and saw that he had several more pint bottles of whisky in it, and that on the same evening the said Holman bought a pint also from Mr. Jackson; that Mr. Jackson had been staying around in that neighborhood some time but they never knew what his name was; that they all called him Mr. Jackson; that Mr. Jackson claimed he was selling some kind of oil lands in Louisiana and also claimed to be a kind of doctor and preacher.

William Garner testified: that he knew a man called Mr. Jackson; that he came to his house some time in the fall of 1916 and ate dinner; that he claimed to be selling some kind of lots in Louisiana; that he did not know what his given name was.

The appellant testified: "On or about the 1st day of November, 1916, I resided with my father, Bill McCoy, about six miles east of the town of San Augustine. I never sold Fox Canton any whisky. The transaction for which I am being tried occurred in this way, at the time charged in the indictment against me, Fox Canton came to my father's house, where I lived; myself, my father, Bill McCoy, Buck Holman, Mr. Jackson and Cleveland Phillips were all in the house at the time and when Fox Canton came I left the room and went out on the gallery and asked Fox Canton what he wanted. He said Mr. Harry Hight had given a dollar to him to buy some whisky with and asked me if I had any whisky. I told him that I did not have any whisky but that I could get him some. Mr. Jackson, who was in the house, had told me earlier in that day that he had some whisky to sell if anyone wanted to buy some whisky; and that's why I told Fox Canton I could get him some. Fox Canton gave me the dollar and went

back in the house to Mr. Jackson where he was sitting and told him that Fox Canton wanted to get a pint of whisky for Mr. Harry Hight and had given me a dollar to pay for it. He asked me what about Mr. Harry Hight and I told him that I thought Mr. Hight was all right. Mr. Jackson then reached down and opened his grip or satchel and got out a pint of whisky. I gave him the dollar that Fox Canton had given to me, and Mr. Jackson gave me the pint bottle of whisky which I carried out on the gallery and delivered to Fox Canton, who left and carried it with him. I did not sell the whisky, I had no interest in the sale, nor did I get any profits of the sale of the whisky whatever. I bought the whisky for Fox Canton as an accommodation only. . . . I ordered whisky for myself twice last year. I think one of the shipments was in the month of October as well as I remember. I had known Mr. Jackson for several weeks. Never knew, what his given name was. We all called and knew him as Mr. Jackson. He claimed to be selling lots, oil land near some oil field in Louisiana. He also doctored some and preached some."

Bill McCoy did not testify, neither did "Mr. Jackson." The credibility of the witnesses and the weight to be given to their testimony is by our statute left exclusively to the jury when a jury is empaneled, and when not, of course, to the trial judge. It is clear in this case that the trial judge believed the testimony of the State's witnesses and did not believe that of the appellant's and his witnesses. He unquestionably had the right to disbelieve them. They were all before him. He saw their manner of testifying and could judge of their credibility. This court can not.

Appellant has only one bill of exceptions, which after the style and number of cause and the usual beginning of "be it remembered" is as follows:

"The State's witness R. H. Young, express agent at San Augustine, Texas, being upon the stand the said witness was permitted over objections of defendant to testify to the following facts, towit: By referring to his ex-record he testified to shipments of whisky consigned to shipments of whisky to and taken out of the express office, Nugent McCoy and Joe McCoy and the defendant at the time it was offered objected to said testimony for the reasons following, towit: because there was no evidence tending to show that the defendant was in any way interest or connected in any way whatever with whisky shipments consigned to either Nugent McCoy or Joe McCoy and the court overruled defendant's objection to said testimony and permitted to go before the court as evidence to which action and ruling of the court defendant then and there excepted and tender this bill of exception and asks that the same be allowed, signed and filed as a part of the record in this case, approved and ordered filed as a part of the record in this case," which was duly signed by the county judge. This bill is too uncertain and vague to show any such error, if at all, which would justify a reversal. It wholly fails in the requisites prescribed

for bills of exceptions. (See 1 Branch's Ann. P. C., 131 et seq., where Mr. Branch collates some of the cases.)

The judgment is affirmed.

*Affirmed.*