**James Edward GEORGE, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 16261.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 14, 1974.

R. H. Stauffacher, Jr., Houston, for appellant.

Carol S. Vance, Dist. Atty., Marshall M. Arnold, Charles E. Martin, Asst. Dist. Attys., Houston, for appellee.

EVANS, Justice.

Appellant, James Edward George, who was sixteen years old at time of trial, appeals from an adjudication of delinquency

in a proceeding tried before the court without a jury. The court's judgment was based upon a finding that appellant had committed an aggravated assault upon a police officer. The trial court ordered appellant placed upon probation in the custody of his parents.

The complaining witness, Lester Lee Davis, a police officer employed by the Bellaire Police Department, testified that on the evening of February 17, 1973 he was working "an extra job" at Marian High School at the request of the nuns there who were having a dance. Officer Davis volunteered testimony that one of the nuns had hired him to watch the parking lot as she suspected alcohol was being smuggled on the premises; however, the court sustained objections to this testimony. Officer Davis testified that he noticed appellant's pickup truck make "several rounds" in the parking lot; that as appellant drove up to the doorway of the gymnasium where the dance was being held, he, Officer Davis, stepped in front of the vehicle, stopped it and asked appellant what he was doing. He said appellant replied, "Nothing"; that he then asked appellant if he and his passenger had alcohol, to which appellant replied "No". Officer Davis said there was a red and black cooler in the back of the truck; that he then went around to the back of the truck and opened the top of the cooler and saw three 6-packs of beer. Officer Davis said he then closed the lid and asked the driver to back up in the parking lot but that appellant sat there; that he, Officer Davis, then reached for the door to let the passenger out and the truck started forward. Officer Davis said his hand was on the door at the time the truck started forward; that he was unable to get his hand out of the door handle and the vehicle kept going; that he heard the passenger say, "Stop, you're dragging him," but that the truck did not stop. He said he went approximately 30 to 40 yards before he could extricate himself when the driver slowed to make an S curve; that he was injured by reason of getting his hand caught and that

he had abrasions to his left ankle and lacerations requiring seven stitches below his kneecap on his left leg.

On cross-examination Officer Davis testified that the night was dark, rainy, cold and wet, and that there were three light poles in the parking lot with two lights on each pole shining straight down. He said at that particular location on the parking lot "You could see well" because of the lights of the gymnasium and that the vehicle was only 10 to 15 feet from the gym when he first approached it. Appellant's vehicle was a 1950, '51 or '52 Chevrolet pick-up painted yellow with a black hood and a right rear fender missing; it had running boards and a push-button type door handle. Officer Davis said that after he had looked in the back of the truck, he walked around to the driver's side; he gave the following version as to what happened at that time:

"A Right next to the—I was touching the truck.

"Q Did you state anything to the people inside the truck?

"A Again I reached for the door to tell him once more to back up in the parking space.

"Q You didn't state anything? You just reached for the door?

"A Yes, sir. I reached for the door.

"Q After the truck began in motion, did you state anything else to the people in the truck?

"A I hollered, 'Hold it'.

"Q That was it? Was that the instant they took off?

"A That was about three long steps after they took off, because he took off at a fairly high rate of speed.

"Q Could you see the people inside the truck from where you were holding onto the door?

"A At that time, yes.

"Q Can you tell us whether or not the window on the passenger's side was rolled up or do you know?

"A It was down approximately three to four inches.

"Q What is the condition of these three long steps down the driveway? Is it further away from the lights or closer to the lights?

"A It was in between the two light poles from the reflection coming from the gym."

Officer Davis further testified on cross-examination that the two persons were not under arrest until after he told them to back up in the parking space; that they were "under arrest" at the time when he saw the beer. He said that after he considered they were "under arrest", the only thing he said to them was "hold it" when they took off. On re-direct examination Officer Davis testified that he had shouted for them to stop and that they did not; that the passenger had alerted the appellant of his predicament and that appellant had not stopped or slowed at the time the warning was given.

Appellant testified that he went to the dance because he had friends there, that it was around 7:30 P.M. and that he went to the gym door to wait for his friends who were coming out but that a car came up behind him and that he had to go around the parking lot again. He said he circled around the parking lot one time and was on his second approach to the gym when the officer stopped him. He said the officer had a flashlight and flicked it off and on and motioned them to stop; that he came up to the car and asked if they had alcohol and then walked around and looked inside the cooler in the back of the truck and he first said "go forward" and then said "go and back up." He said that at that time the officer stepped back and he, appellant, panicked and drove off. He said he was looking straight ahead and did not look over in the direction to see where

the officer was. He said his passenger said, "Don't do it, Jimmy," asking him not to leave but never said anything to him about the officer being caught or holding onto the vehicle. He said after they had gone about 50 yards the passenger said something about the officer "rolling or something". He said that was the first occasion that he knew the officer was still not standing back where he originally had been. He said he could not see the officer holding onto the door nor did he hear the officer say anything after he stepped back from the car. He heard no yells or commands. On cross-examination he denied he thought the officer could possibly be hit when he took off; he said he thought he was far enough back from the truck. He said his passenger told him to stop because he would get in less trouble. He said he did not see the officer on the ground after he left the property but was told he was; he did not go back to see what had happened.

The passenger, a friend of appellant's, testified that they had made about two circles on the parking lot at the time the officer stopped them; that after the officer looked in the cooler, he at first started to tell them to park in one of the front parking spaces but then told them to back up and shined his flashlight at a spot behind them. He said after the officer told them to back up he took a couple of steps away from the truck and was about three to four feet away from it when appellant "panicked and took off." He said when the appellant "took off" he yelled for appellant to stop and said, "Stop, don't do it, Jimmy." He said as they were making the "S curve" leaving the parking lot he looked back and saw the officer rolling on the ground. He said the officer was about 40 feet from where they had first started. He said that at the time he believes he again told the driver to stop, but he said nothing else to the driver. He said he told the appellant the officer had rolled after they had left the parking lot. He said after the officer stepped back from the truck, he, the passenger, looked away from him

and it is possible the officer could have stepped forward again and put his hand on the handle.

Appellant contends the State failed to prove all the essential elements of the offense of aggravated assault and that the evidence does not support the trial court's judgment.

■ In determining this question, the criterion established by our Court of Criminal Appeals is whether there is evidence of probative value, which when viewed in the light most favorable to the prosecution, and taken with all reasonable inferences to be drawn therefrom, is sufficient to sustain the trial court's finding. Hill v. State, 456 S.W.2d 699 (Tex.Cr.App.1970). It is for the trial court, a jury having been waived, to determine the credibility of the witnesses and on appeal its finding will not be disturbed if based upon probative evidence. Isaac v. State, 468 S.W.2d 855 (Tex.Cr. App.1971); McCoy v. State, 81 Tex.Cr.R. 518, 196 S.W. 543 (1917). Appellee argues that the evidence must be tested under the rules of civil procedure, as in an instance where no findings of fact have been filed or requested; however, we find it unnecessary to specifically determine that question since under either criteria our decision in the case would be the same. There is no question that the burden is clearly upon the State of Texas to prove its case, not by a preponderance of the evidence, but beyond a reasonable doubt. In re Winship, 90 S. Ct. 1068 (1970). See also this court's opinion in State of Texas v. Perry D. Marshall, 503 S.W.2d 875, and authorities cited therein.

Article 1138 of the Texas Penal Code reads in part:

"The use of any unlawful violence upon the person of another with intent to injure him, whatever be the means or the degree of violence used, is an assault and battery . . . ."

Article 1139 of the Penal Code states:

"When an injury is caused by violence to the person, the intent to injure is presumed, and it rests with the person inflicting the injury to show accident or innocent intention . . . ."

Article 1147 states:

"An assault or battery becomes aggravated when committed under any of the following circumstances:

"(1) When committed upon an officer in the lawful discharge of the duties of his office, if it was known or declared to the offender that the person assaulted was an officer discharging an official duty."

Under these statutes, the State was required to prove that appellant used unlawful violence with intent to injure an officer in the lawful discharge of the duties of his office. To prove the element of intent, the State relied not only upon the presumption arising under Article 1139 but also presented testimony of Officer Davis to the effect that appellant was aware he was causing the injury when his passenger said, "Stop, you're dragging him" and after which warning appellant did not stop the truck. The trial court was at liberty to believe the testimony of the officer and to disbelieve the testimony of the appellant and his passenger that they were unaware of what was happening and had no intention of hurting the officer.

To prove that the assault was aggravated, the State was required to show that the officer was acting in the lawful discharge of the duties of his office. The fact that Officer Davis was not performing services on behalf of his primary employer, the Bellaire Police Department, but was working at an "extra job" does not prevent the officer's duties from being official. See Monroe v. State, 465 S.W.2d 757 (Tex.Cr. App.1971). Appellant himself testified he knew that Davis was a police officer; thus there is no problem of notice to the offender. See Ford v. State, 158 Tex.Cr.R. 26, 252 S.W.2d 948 (Tex.Cr.App.1953).

There are, however, other elements of the charged offense which present greater problems.

██ Appellant asserts that Officer Davis had no lawful basis for detaining him and that his only act was that of driving his vehicle forward. In order to sustain this conviction on aggravated assault upon the officer it must be shown that at the time of the alleged assault the arrest was lawful and that the officer was therefore engaged in the lawful discharge of the duties of his office. Crow v. State, 152 Tex.Cr.R. 586, 216 S.W.2d 201 (Tex.Cr. App.1949). See also Simms v. State, 319 S.W.2d 717 (Tex.Cr.App.1958). The defendant should be acquitted if he only attempted to prevent or extricate himself from an unlawful arrest. Randall v. State, 447 S.W.2d 912 (Tex.Cr.App.1969); Duke v. State, 168 Tex.Cr.R. 403, 328 S.W.2d 189 (1959).

██ The State, in the case at bar, was required to show that the detention and search of appellant's vehicle was lawful in order to prove that Officer Davis was then engaged in the lawful discharge of his official duties.

"Probable cause for an arrest exists where, at that moment, the facts and circumstances within the knowledge of the arresting officer and of which he has reasonably trustworthy information would warrant a reasonable and prudent man in believing a particular person has committed or is committing a crime." Brown v. State, 481 S.W.2d 106, 110 (Tex.Cr.App.1972).

"The standard applicable to determining whether the facts of a case support an officer's probable cause assessment at the time of the challenged arrest and search are at least as stringent as the standards applied when reviewing the decision of a magistrate." Id. at 109.

In Jones v. State, 493 S.W.2d 933 (Tex. Cr.App.1973), two Dallas police officers approached five men in an alley and after seeing one of the men drop a match box and another a billfold, they lined all five men against the wall; the officers picked up the match box and the billfold and found they contained marijuana, and then searched the remaining men, including the appellant in whose shirt pocket they found a match box containing marijuana. The Court of Criminal Appeals held that under the circumstances of the case, the officers were justified in making a search of appellant's person. The court there said:

"We have recognized a distinction between probable cause to arrest and probable cause to investigate, and allow a policeman, under the proper circumstances to 'stop' a person and detain him briefly for questioning upon a reasonable suspicion that he may be connected with criminal activity. Brown v. State, Tex. Cr.App., 481 S.W.2d 106. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889, teaches us that:

" 'Where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' "

We find nothing in the record which would indicate that Officer Davis had reason to conclude that appellant and his passenger were armed or dangerous or which would indicate they were engaged in or about to become involved in any criminal

activity. In this respect, Officer Davis, on cross-examination testified as follows:

"Q At the time you first accosted these boys or approached this vehicle, were they committing any offense against the laws of the State of Texas or the City of Bellaire?

"A No, sir.

"Q To your knowledge?

"A No.

"Q So, at the time you began this sequence, you did not have a warrant for their arrest, did you?

"A I did not. No.

"Q And they were not committing an offense that you could see at the time?

"A No, not at the time?

"Q At that time, you were standing to the right of and to the rear of the vehicle when this sequence of your reaching for the door handle began?

"A I was to the passenger side of the truck and just—Well, the passenger side of the truck.

"Q Now, officer, do you believe this boy intended to hit you with this vehicle?

"A Not hit, no.

"Q Do you believe that this boy intended to hurt you in any way?

"A Not intentionally. No."

The fact that appellant may have driven through the parking lot several times cannot be said to reasonably support a conclusion that he was committing or about to commit a crime. It is undisputed that the lid was closed on the ice box on the truck bed in the back of the truck and had to be opened in order for Officer Davis to see inside. There is no evidence indicating that the contents of the box were apparent

and so far as an observer could see, it could have contained soft drinks, or for that matter, could have been empty. The fact that upon opening the box Officer Davis discovered beer does not support the conclusion that his initial action in searching appellant's vehicle was lawful. ". . . The right to arrest without warrant must be determined by the facts existing at the time of the arrest, and facts found as a result of the arrest cannot be utilized to authorize the arrest in the first instance." Giacona v. State, 298 S.W.2d 587 (Tex.Cr.App.1957).

Article 14.03, Texas Code of Criminal Procedure, provides:

"Any peace officer may arrest, without warrant, persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony or breach of the peace or threaten or are about to commit some offense against the laws."

The fact that a young person is driving on a high school parking lot while a dance is being held in the gymnasium does not, in our opinion, constitute a suspicious circumstance from which one could reasonably assume that he is about to breach the peace or commit some other offense.

". . . the inarticulate hunch, suspicion, or good faith of an arresting officer is insufficient to constitute probable cause for an arrest, search, or temporary detention. Rios, supra; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1969); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." Talbert v. State of Texas, 489 S.W.2d 309, 311 (Tex.Cr.App.1973).

Officer Davis may very well have been acting under some duty to the nun who employed him when he stopped and searched appellant's vehicle; however, under the circumstances of this case, he cannot be said to have been acting in the discharge of an "official duty." We do not intend to suggest that Officer Davis did

not have the right to "stop" appellant's vehicle and to detain appellant briefly for questioning. However, upon the record before us, we hold the search of appellant's vehicle was not lawful and that any arrest or attempted arrest after that illegal search would not have been lawful. Talbert v. State, supra; Terry v. Ohio, supra. The State, therefore, failed to prove the elements of its case beyond a reasonable doubt.

In view of our foregoing decision we find it unnecessary to discuss appellant's remaining points concerning the alleged error of the trial court in admitting certain evidence.

The judgment of the trial court is reversed and judgment here rendered for appellant.