GLENCOE LIME & CEMENT COMPANY, a Corporation, v. CITY OF ST. LOUIS ET AL., Defendants-Appellants.

GLENCOE LIME & CEMENT COMPANY a Corporation, v. CITY OF ST. LOUIS ET AL., Defendants, WESLEY A. MILBY ET AL., Interveners-Appellants.—108 S. W. (2d) 143.

Division One, July 30, 1937.

*Edgar H. Wayman, Louis A. McKeown* and *Francis J. Sullivan* for City of St. Louis et al.; *John E. Corvey* for Wesley A. Milby et al.

*Salkey & Jones* and *Sam Elson* for respondent.

GANTT, J.—█ Action to enjoin the city of St. Louis and its officers from enforcing a zoning classification of Lot 25, Block 5406, as "residential." Under the pleadings the issues are: (1) The constitutionality of the classification; (2) the question of immunity under the "non-conforming use" provision (Sec. 8) of the general zoning ordinance. It was alleged that the lot had been used as a storage yard for building materials long prior to the enactment of the ordinance, and for that reason was immune under said provision. The issues are not inconsistent. Plaintiff did not seek relief under the ordinance. It sought relief from the enforcement of the classification.

The court found for plaintiff on both issues and permanently enjoined defendants and the successors in office of the individual defendants from enforcing the classification against the lot and from interfering with its use for industrial purposes. Defendants and intervening property owners appealed.

█ I. Defendants and interveners contend that the petition states no cause of action in equity for the reason it did not allege that plaintiff exhausted its remedies under the zoning ordinance and enabling act. [Sec. 7259 et seq., R. S. 1929.]

The "non-conforming use" issue assumed the constitutionality of the classification. It is provided in Section 16 of the ordinance that the Board of Adjustment has jurisdiction to "hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Building Commissioner or Board of Public Service in the enforcement of this ordinance." The section also provides for review by the circuit court. On this issue plaintiff should have pursued the remedy provided by ordinance before seeking relief in equity. If so, plaintiff should have alleged and proved that it exhausted said remedy before seeking such relief.

Of course, the ordinance affords no remedy for the determination of its constitutionality. Even so, plaintiff was charged in the city court with a violation of the ordinance and arrested. Defendants argue that in said case plaintiff could challenge the constitutionality of the classification and for that reason had an adequate remedy at law. It did not think so and instituted this suit.

The ordinance provides a penalty for each and every day the lot is used for storage purposes. Under similar circumstances we ruled as follows:

"But is the remedy at law adequate? It must be remembered that

the injury complained of here is continuous. The ordinances are continuous, and plaintiffs' business is continuous, and, under the ordinances, for each wagon load of coal sold and delivered in violation of the restrictive provisions thereof, the plaintiffs each become subject to an action in the municipal courts of the city for such violation. The fact that in each of such suits the plaintiffs might plead successfully the invalidity of the ordinances as a defense thereto, does not give them an adequate remedy." [Coal Co. v. The City of St. Louis, 130 Mo. 323, l. c. 328, 329, 32 S. W. 649; Jewel Tea Co. v. Carthage, 257 Mo. 383, l. c. 391, 165 S. W. 743.]

II. Defendant next contends that the classification is a valid exercise of the police power and not violative of either the State or Federal Constitutions.

We have ruled the ordinance valid in its general scope. [State ex rel. Cadillac Co. v. Christopher, 317 Mo. 1179, 298 S. W. 720.] In Village of Euclid et al. v. Ambler Realty Co., 272 U. S. 365, a similar ordinance was ruled valid in its general scope. It also ruled as follows: "It is true that when, if ever, the provisions set forth in the ordinance in tedious and minute detail, come to be concretely applied to particular premises, including those of the appellee, or to particular conditions, or to be considered in connection with specific complaints, some of them, or even many of them, may be found to be clearly arbitrary and unreasonable." Furthermore, in Nectow v. Cambridge, 277 U. S. 183, it was ruled, conceding the validity of the ordinance, that as applied to the land in question it was "within the ban of the Fourteenth Amendment" and could not be sustained. In other words, each case must be ruled on its particular facts.

In 1914 the Schwartz Material Company owned land at the southeast corner of the intersection of Southwest Avenue (extending east and west), and the Missouri Pacific Railroad right of way (extending northeast and southwest). Residences fronting on Southwest Avenue are located on lots west of this land to Limit Avenue (extending north and south). Limit Avenue is the western limits of the city. South of said land and residence lots is a fifteen-foot alley (extending west from the railroad right of way to Limit Avenue). This alley will be herein designated Southwest Avenue alley. The Schwartz land (herein designated Lots 1 and 2) is bounded on the north by a frontage of one hundred twenty-six feet on Southwest Avenue, on the west by the above-mentioned residence property, on the south by forty-nine feet of Southwest Avenue alley, and on the east by one hundred fifty-three feet of the west line of the railroad right of way. On Lots 1 and 2 Schwartz conducted a building material business from 1914 to 1926. He bought and sold sand, gravel, cement, cinders, concrete, tiling and other building materials. A warehouse, garage, scales, materials binds and residence used as an

office with living quarters for the superintendent are and have been located on said lots during said time. The bins are adjacent to a spur track constructed from a point on the main line of the railroad one hundred feet south of Southwest Avenue alley. The spur track terminates three feet from the east boundary line of Lots 1 and 2. Building materials have been stored on said lots from 1914 to the date of trial, and the business has been served by trucks and railroad cars. The ordinance classified said lots "commercial." This classification is not challenged in this proceeding.

Plaintiff also engaged in the building material business and had two or three storage yards on leased land adjacent to other railroads in that part of the city or county. On September 18, 1906, it purchased Lot 25, Block 5406, the triangular lot involved herein, for $5500. It paid both general and special taxes on the lot, including $2000 benefit taxes for the improvement of Southwest Avenue. The lot is described in the zoning ordinance as "bounded on the west by the east line of the twenty-foot wide north and south alley, located in city block fifty-four hundred six; on the north by the south line of the fifteen-foot wide east and west alley, located in the hereinbefore mentioned city block; on the east by the west line of the Missouri Pacific Railroad right of way, and on the south by the eastern prolongation of the south line of Anna Street, being lot twenty-five in city block five thousand four hundred six." Its north boundary is the base, two hundred thirty feet; west boundary the leg or perpendicular, four hundred feet to a point six feet from the west line of the railroad right of way, and then extends directly in a southwesterly direction one hundred sixteen feet to the eastern prolongation of the south line of Anna Street. The hypotenuse is the west line of the railroad right of way, six hundred three feet. As stated, the right of way extends northeast and southwest. The one hundred sixteen foot prolongation of the south point of the triangle is six feet wide. Anna Street, extending east and west, ends at this point of the triangle.

The north part of the land across the alley (herein designated Limit Avenue alley) and west of Lot 25 is occupied by residences fronting on Limit Avenue. The south part of the land across said alley is vacant to Anna Street. In that part of the city is a church on Limit Avenue. A church, public school and a number of blocks of residences are east of the railroad, and a number of blocks of residences are north of the lot.

On January 22, 1926, plaintiff purchased from Schwartz Lots 1 and 2 for $16,500. Plaintiff continued the building material business on said lots, and in 1932 or 1933 closed its leased yards and moved the building materials thereon to Lot 25. For many years children used the western part of Lot 25 for a playground. On

moving said materials to Lot 25 plaintiff fenced same to protect the children and its property. On several occasions the fence was broken down by unknown persons. About this time the community association sought to rent the lot for a playground and community purposes.

Under existing conditions the triangular lot is of no value for residences. It is circumscribed by two alleys and the railroad. In this situation defendants rely on two real estate men who testified as experts. In preparing for the trial they viewed Lot 25, its surroundings and the vicinity.

In answering if it would be practical to divide said lot for residences, one expert testified: "Well, it can be done." The other expert testified that he could work out a plan and would do so for the other fellow but "wouldn't be so keen on buying;" that he never put up the money but got the commissions; that he always advised the other fellow to buy, and that he did not know whether he would succeed in the undertaking but would try to do so.

As experts, they suggested a street paralleling the railroad right of way from Southwest Avenue alley south to Anna Street, and a division of the balance of Lot 25 into lots for residences. One expert testified that in his opinion said lots could be sold for a gross sum of $6500. He gave no opinion on the expense of grading or other expenses that might be necessary. The other expert suggested such a street, scattering cinders over same and selling lots without the expenditure of money. He estimated a net sum of $6450 for the lots.

The testimony of the experts is not convincing. They were evasive and technical. The frontage of the lots on and proximity to the main lines of the railroad and spur track, the location in the rear of surrounding residences, and the isolated position of the lots with reference to Southwest Avenue and Limit Avenue, main thoroughfares of the city, would cause the lots to be of no value for residences. Furthermore, the use of Lot 25 as a storage yard for sand, cinders, cement, tiling, gravel and similar material supplies, would not materially increase the noise and dust in dry weather now prevailing in the vicinity from trucks and railroad cars serving the material business on Lots 1 and 2. The record does not show that the use of Lot 25 for said purpose involves the public health, safety, morals or general welfare. The classification is almost a complete invasion of plaintiff's said property. It is unreasonable, arbitrary and within the ban of Section 30, Article II of the Constitution of Missouri and the Fourteenth Amendment to the Constitution of the United States.

 III. Defendants next contend that the court was in error in limiting interveners to four witnesses on the question of the use of Lot 25. If the limitation was erroneous, it could not have been prejudicial.

IV. Defendants next contend that the chancellor below was without authority to restrain the city and its officers from interfering with plaintiff's use of the lot for industrial purposes. The contention must be sustained. The zoning authority is lodged with the legislative body of the city. The courts are without jurisdiction in the matter. [Sec. 7259, R. S. 1929.]

The judgment is reversed and the cause remanded with directions to enter judgment in conformity with this opinion. All concur, except *Douglas, J.,* not sitting.