PENTECOSTAL CHURCH OF GOD, Appellant,

v.

William E. HUGHLETT, Collector of Jasper County, Missouri, et al., Respondents.

No. 69277.

Supreme Court of Missouri, En Banc.

Oct. 13, 1987.

Donald V. Pierce, Jr., Kansas City, for appellant.

Terri S. White, Asst. Pros. Atty., Peculiar, for respondents.

BLACKMAR, Judge.

The plaintiff is a non-profit pro forma corporation organized under the provisions of Chapter 352, RSMo. It owns and operates "Messenger Towers", an apartment building consisting of 130 units. Under agreement with the United States Department of Housing and Urban Development (HUD), occupants must be at least 62 years of age or handicapped, and must meet certain financial guidelines. A basic rent is approved by HUD for each type of apartment, calculated to allow the complex to break even, with an allowance for depreciation. Tenants pay the basic rent or 27% of their net income, whichever is less. HUD reimburses the plaintiff for the difference between the basic rent and the figure actually paid. Up to 10% of the tenants may be charged a "market rent," based on their ability to pay. The difference between the basic rent and the market rent goes into a residual receipts account under the control of HUD. Ninety to 95% of the tenants receive rent subsidies. HUD also pays an interest subsidy to plaintiff consisting of the difference between 1% interest and the 8% interest which the plaintiff pays on its construction mortgage. When the mortgage is paid off, the estimated time being 40 years, plaintiff will have the building free and clear of the mortgage and of involvement with HUD.

■ The taxing authorities of Jasper County assessed ad valorem real estate taxes on the property. The plaintiff paid the taxes under protest and filed suit in circuit court for refund pursuant to Section 139.031, RSMo 1986. The circuit court, following a bench trial, made findings of fact and entered judgment for the defendant collector. The court of appeals affirmed. We granted transfer to explore the possibility of conflict with *Franciscan Tertiary Province v. State Tax Commission,* 566 S.W.2d 213 (Mo. banc 1978). We reverse the judgment of the circuit court.

■ The collector claims that the circuit court was without jurisdiction, asserting that the plaintiff was obliged to file its claim for exemption with the County Board of Equalization, and to proceed from there to the State Tax Commission, citing *Westglen Village Associates v. Leachman,* 654 S.W.2d 897 (Mo. banc 1983). We disagree. The plaintiff is not complaining about the valuation but rather contends that the property is not subject to ad valorem taxation at all, on the ground that it is "actually and regularly used exclusively for purposes purely charitable and not held for private or corporate profit." Section 137.-100(5), RSMo 1978. There is no valuation or equalization problem, and so a large part of the administrative procedure would be redundant. The claim for refund was presented in the manner authorized by the statute.

*Franciscan* was a seminal case which established the provision of housing for aged and handicapped persons who are unable to bear the full cost is a charitable purpose, so that property used exclusively for that purpose is exempt from ad valorem taxation. This holding distinguished or qualified several earlier cases. The general pattern described in *Franciscan* exists in this case, to such an extent that the details need not be repeated, and so we direct our attention to the distinctions suggested by the taxing authorities and by the court below.

It is pointed out that after the mortgage is paid off, presumably after 40 years, the plaintiff will own a valuable building free and clear, and at little cost. This circumstance, however was present in *Francis-*

*can,* 566 S.W.2d 226 [12], and so does not serve to distinguish the case.

The trial court points out that the statement of income and expenses includes a "depreciation" factor which exceeds the expected diminution in value. Allowance of depreciation actually provides the plaintiff with additional funds to meet its expenses and mortgage payments, so that it will be able to pay off the loan over the amortization schedule. Rentals received are used entirely to sustain the project. There is no prohibited profit to private individuals or corporations.

The trial court observed that the operation of the facility did not relieve the government of any of its responsibilities, suggesting that this is a requirement for exemption. It is not necessary to demonstrate any such relief. Nor is it of any significance that all or part of the cost of furnishing the housing is provided by government subsidies. 566 S.W.2d 226 [11]. The government apparently recognized the need to assist the aged and infirm in providing for their housing needs, and so adopted programs to encourage agencies such as this plaintiff to sponsor projects.

The collector points out that in *Franciscan* the cost of social and recreational services was paid by the owner of the project. Here, similar services are not supplied by the owner, but rather are provided by private and foundation donations. Reference to *Franciscan* again shows that this is a distinction without a difference. The opinion states, 506 S.W.2d 276 [11] "... the contribution to the project could have been solely from government funds ...," citing *Bader Realty & Inv. Co. v. St. Louis Housing Authority,* 358 Mo. 747, 217 S.W.2d 489 (Mo. banc 1949).

This last quotation refutes the attempted distinction by reason of *Franciscan's* substantial initial investment in excess of government funds. This record shows, furthermore, that this plaintiff advanced $90,985 at the inception of the project, taking back a note bearing interest at 8%.

Likewise of no significance is the circumstance that the subsidies were inadequate during part of the time covered by *Franciscan,* so that the sponsoring agency had to contribute to make up the deficit.

It is next asserted that there is no showing that any tenant remained at the complex for a substantial period without paying any rent. There is no requirement that the tenants, or any of them, be totally incapable of providing for themselves. *Franciscan,* 566 S.W.2d 213 [9].[1] As has been pointed out earlier, the great majority of the residents were eligible for rent subsidies. The case is clearly distinguishable from *Evangelical Retirement Homes of Greater St. Louis v. State Tax Commission,* 669 S.W.2d 548 (Mo. banc 1984), in which the elderly residents were obliged to pay an entry fee in five figures and to pay fully compensatory rents wholly out of their own resources.

The taxing authorities argue that there is no assurance that the property will be used for charitable purposes after the plaintiff acquires full title in 40 years. The answer is twofold. The plaintiff is a charitable corporation qualified as tax exempt under Section 501(c)(3) of the Internal Revenue Code. Its charter provisions limit the uses which may be made of its property. If in the future it should depart from a valid charitable purpose, the authorities could return the property to the tax rolls.

*Franciscan* was designed to give general approval to housing projects for the elderly and handicapped. It should not be read grudgingly. The attempted distinctions are insufficient as a matter of law. The evidence shows without contradiction that this project meets the threefold test of *Franciscan* in that: (1) it operates for purely charitable purposes; (2) no private profit may result, and (3) the dominant use benefits society generally, and an indefinite number of people. 566 S.W.2d 224, 226.

The judgment is reversed and the case is remanded with directions to enter judg-

---

1. *Franciscan* adopted a policy that no tenant was to be evicted for inability to pay rent, but had never had occasion to give effect to this policy. In that case only 23 out of 142 tenants received rental assistance, in contrast to the 90–95% in this case.

ment for the plaintiff taxpayer for return of the taxes paid under protest.

All concur.