**COUNCIL HOUSE REDEVELOPMENT CORPORATION, Appellant,**

v.

**Dennis HILL, Assessor, City of St. Louis, Missouri, et al., Respondents.**

No. 78219.

Supreme Court of Missouri, En Banc.

Jan. 23, 1996.

Nancy M. Watkins, George O. Suggs, St. Louis, James C. Owens, Chesterfield, for Council House.

Tyrone A. Taborn, Edward J. Hanlon, Eugene Hanses, St. Louis, for Hill.

Kenneth C. Brostron, Michael D. Regan, St. Louis, for intervenor-respondent.

COVINGTON, Judge.

Appellant Council House Redevelopment Corp. (Council House), appeals from an order of the trial court dismissing its action against respondents Dennis Hill, Assessor of the City of St. Louis, and the St. Louis Board of Equalization. Council House seeks a declaratory judgment that it is entitled to a charitable exemption from ad valorem taxation under section 137.100(5), RSMo 1994, on certain real property it owns. The Board of Education for the City of St. Louis inter-

vened on the side of the respondents. The trial court dismissed the petition on subject matter jurisdictional grounds, concluding that Council House had not properly preserved its claim as it related to taxes levied in 1992 and 1993. As to Council House's exemption claim as it related to taxes levied in 1994, the trial court found that Council House had not properly exhausted all available administrative remedies before filing for declaratory relief in the circuit court. The court of appeals affirmed. This Court granted transfer. Affirmed in part; reversed and remanded in part.

Council House is incorporated as an urban redevelopment corporation under the provisions of chapter 353, RSMo. At issue is the taxation of certain real property that Council House owns in the City of St. Louis upon which is built a residential apartment building in which three hundred residential units are rented to senior citizens or disabled individuals who meet certain qualifications under federal law. It is undisputed that Council House is exempt from federal income tax. I.R.C. § 501(c)(4) (1994).

The city assessed ad valorem taxes on the real estate for the 1992 tax year. Council House appealed the assessment to the board of equalization claiming that the real estate was exempt from taxation as property "actually and regularly used exclusively ... for purposes purely charitable and not held for private or corporate profit...." § 137.100(5). After a hearing, the board of equalization denied Council House's appeal. In July 1992, Council House filed a petition in the circuit court seeking a declaration of its right to a charitable exemption. The trial court heard evidence on the claim on May 10, 1994. Evidence was adduced at trial with respect to Council House's use of the property from 1992 to 1994, as well as the taxes assessed and paid for the tax years 1992 and 1993.

■ Subsequent to its filing of the present action, Council House paid without protest ad valorem taxes that were assessed in 1992 and 1993. In order to recover taxes allegedly collected illegally, the taxes must be paid in compliance with the protest procedures set forth in section 139.031, RSMo 1994. *B & D*

*Inv. Co., Inc. v. Schneider*, 646 S.W.2d 759, 763–64 (Mo. banc 1983); *see also Nexus Rent–A–Car, Inc. v. Nash*, 747 S.W.2d 683, 687 (Mo.App.1988) ("[T]he taxpayer's remedy under § 139.031 is exclusive.... [F]ailure to comply with § 139.031.1[] bars recovery of the taxes in question."). Because Council House failed to pursue the appropriate administrative remedy for a refund, namely paying the taxes it claimed were invalidly assessed under protest and at the time of payment filing with the collector a written protest statement, the trial court properly ruled that any issues regarding the taxes paid for the years 1992 and 1993 were abandoned.

Remaining at issue is the ad valorem tax assessed on Council House's property for the 1994 tax year, which had not been paid as of the date of trial. The trial court dismissed Council House's action as it pertained to this tax as well, holding that the issue was not properly before the court for the reason that Council House had failed to exhaust either of the available statutory remedies. Specifically, the court noted that Council House could appeal the assessment to the City of St. Louis board of equalization. § 138.180, RSMo 1994. An adverse ruling by the board of equalization could then be appealed to either the State Tax Commission pursuant to section 138.430.1, RSMo 1994, or the circuit court under section 138.430.3, RSMo 1994. Alternatively, the court held that Council House could have paid the taxes under protest pursuant to section 139.031 and brought suit for a refund. In rejecting Council House's contention that it need not follow these administrative procedures, the court held that "[o]nly in exceptional circumstances ... may a taxpayer resort directly to a court of equity without first pursuing such remedies."

■ In its sole point on appeal, Council House asserts that the trial court erred in dismissing the declaratory judgment action as it pertains to the 1994 tax assessment. Council House contends that an appeal to the board of equalization is not a jurisdictional prerequisite to filing a declaratory action in the circuit court when the only issue is its exempt status as a charity rather than the

valuation of the assessment itself. This Court agrees with Council House's assessment.[1]

The legislative scheme governing the assessment and levy of ad valorem property taxes is found in chapter 137, RSMo. All real property is assessed annually as of the first day of January. § 137.080, RSMo 1994. Property held for "purposes purely charitable" is specifically exempted from all taxation by the Missouri Constitution, article X, section 6, and codified at section 137.100, RSMo 1994. Any person aggrieved by an assessment of taxes may appeal in writing to the county board of equalization. § 137.275, RSMo 1994. The procedures for equalization and review of real estate tax assessments are set out in chapter 138, RSMo. In the City of St. Louis, a taxpayer must appeal in writing to the board of equalization by the second Monday in May of each year. § 138.180. "The county board of equalization shall, in a summary way, determine all appeals from the valuation of property made by the assessor, and shall correct and adjust the assessment accordingly." § 138.060, RSMo 1994. The board of equalization may raise, lower, or keep a property valuation at the amount set by the assessor. §§ 138.050, .100, .150, RSMo 1994.

The trial court in the present case correctly pointed out that Council House could not file for a refund of improperly assessed taxes under the procedures set out in section 139.031. At the time of trial the taxes for 1994 had not yet been paid; in fact, they were not yet due. An action for refund coupled with the payment under protest of the taxes would, therefore, have been premature. In dismissing Council House's action the trial court noted that Council House was obligated to pursue an appeal to the board of equalization under section 138.430.3 before filing for a declaratory judgment in the circuit court. Section 138.430.3 provides that in all questions and disputes regarding the exclusion or exemption of property from as-

sessment or from the tax rolls, "[e]very owner of real property . . . shall have the right to appeal to the circuit court . . . from the decision of the local board of equalization not later than thirty days after the final decision of the board of equalization. . . ." Significantly, the statute provides that the appeal to the circuit court on exclusion or exemption issues "shall be as a trial de novo in the manner prescribed for nonjury civil proceedings." *Id.*

■ The trial court found that Council House had not alleged any "exceptional circumstances" that would warrant disregarding the statutory procedures set out in section 138.430.3, implicitly holding that Council House must first exhaust all available administrative remedies before filing in the circuit court. The trial court presumably relied on the exhaustion doctrine, which provides that "where a remedy before an administrative agency is available, relief must be sought by exhausting this remedy before the courts will act." *Sperry Corp. v. Wiles*, 695 S.W.2d 471, 472 (Mo. banc 1985); *see also* § 536.100, RSMo 1994 (granting judicial review of a final decision in a contested case only to those parties who have exhausted all administrative remedies provided by law).

As a general rule, courts will refrain from acting until the litigants have exhausted all available administrative remedies provided by statute. In establishing a system for the levying of taxes and the appeal of property tax assessments, including those set out in sections 138.060, 138.430, and 139.031, the legislature has properly charged administrative agencies with responsibilities associated with the determination of property valuation methods as well as the actual assessment of property.

■ Proceedings before administrative bodies are not, however, a taxpayer's exclusive remedy for claiming an exemption from taxation. *Washington Univ. v. Baumann*, 341 Mo. 708, 726, 108 S.W.2d 403, 413 (banc

---

1. Respondents assert that the trial court did not err in dismissing the action as it relates to taxes assessed in 1994 because Council House did not specifically seek a declaration for exemption for that year in its petition. It is clear that evidence was adduced at trial regarding the use of the

property during the 1994 tax year. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b). The issue was tried by implied consent in this case.

1937). "[W]hen a taxpayer does not question the valuation of his property, but asserts it is not subject to the tax, he need not appear before the Board of Equalization but may enjoin the enforcement of the tax." *B & D Inv. Co., Inc. v. Schneider,* 646 S.W.2d 759, 762 (Mo. banc 1983). In *Pentecostal Church of God v. Hughlett,* 737 S.W.2d 728 (Mo. banc 1987), for example, plaintiff, claiming that its property was exempt from taxation for the reason that it was used exclusively for charitable purposes, paid ad valorem real estate taxes under protest and filed suit in the circuit court for a refund pursuant to section 139.031. *Id.* at 729. The trial court entered judgment for the defendant collector. *Id.* On appeal, defendant argued that the circuit court was without jurisdiction to hear plaintiff's refund action because, under *Westglen Village Assocs. v. Leachman,* 654 S.W.2d 897, 899–900 (Mo. banc 1983), and the doctrine of exhaustion of administrative remedies, plaintiff was obliged to file its claim for exemption with the county board of equalization first and proceed from there to the commission. *Id.* This Court held otherwise:

> The plaintiff is not complaining about the valuation but rather contends that the property is not subject to ad valorem taxation at all, on the ground that it is "actually and regularly used exclusively [...] for purposes purely charitable and not held for private or corporate profit." Section 137.100(5), RSMo 1978. There is no valuation or equalization problem, and so a large part of the administrative procedure would be redundant.

*Pentecostal Church,* 737 S.W.2d at 729.

■ The holding of *Pentecostal Church* is well-founded in the doctrine of exhaustion of administrative remedies. The doctrine presupposes that the legislature has vested in the administrative agency exclusive jurisdiction in a matter of which the courts are completely without power to adjudicate. *Antoine v. Fletcher,* 307 S.W.2d 898, 907 (Mo. App.1957); *see also* 73 C.J.S. *Public Administrative Law and Procedure* § 38 ("[I]t is essential to the application of the doctrine that the administrative remedy be exclusive, ... or that there be at least an implication of intent that the administrative remedy is ex-clusive."). Section 138.430.3 provides for de novo review of a board of equalization exemption determination. It is clear the legislature did not contemplate such exclusive jurisdiction in the administrative agencies. Because the question of exemption poses no factual questions or issues requiring the special expertise within the scope of the board of equalization's responsibility, but instead proffers only questions of law clearly within the realm of the courts, the doctrine of exhaustion does not apply in the present case. *See* 73 C.J.S. *Public Administrative Law and Procedure* § 40 ("A failure to exhaust administrative remedies may be justified when the only or controlling question is one of law, at least where there is no issue essentially administrative, involving agency expertise and discretion, which is in its nature peculiarly administrative....").

■ The holding of *Pentecostal Church* was reiterated by this Court in *Local Union No. 124 v. Pendergast,* 891 S.W.2d 417, 418 (Mo. banc 1995). The plaintiff in *Local Union No. 124* sought relief from the assessment of real estate taxes imposed, claiming it was entitled to at least a partial charitable exemption under section 137.101, RSMo 1986. *Id.* Because section 137.101 requires that the assessing authorities determine which portions of the property are used for purely charitable purposes and which are used for private economic purposes, this Court required the plaintiff to exhaust its administrative remedies before challenging the assessment in circuit court. *Id.* *Local Union No. 124* is distinguishable from *Pentecostal Church.* In *Local Union No. 124,* the evidence at trial demonstrated that the property at issue was not devoted exclusively to charitable purposes. Because there was no claim that the property was wholly exempt from taxation, there was a valuation issue that had to be determined using the expertise of the administrative agencies. *Id.* This Court opined that an extension of *Pentecostal Church* to the partial exemption determination would improvidently confer upon the circuit court the power to "grant to a landowner the same or similar relief that is afforded by the board of equalization." *Id.* "[T]he circuit court does not have the author-

ity to substitute its opinion as to value for the opinion of the administrative agency upon record evidence under which different conclusions might be drawn in the exercise of administrative discretion." *John Calvin Manor, Inc. v. Aylward*, 517 S.W.2d 59, 63 (Mo.1974).

*Pentecostal Church* controls the present case. Council House does not dispute any issue of the valuation or assessment of its property requiring that it file its action at the board of equalization under section 137.275. It seeks neither a declaration of partial exemption under section 137.101 nor a refund of taxes improperly collected under section 139.031. It seeks only a declaration that it is wholly exempt from taxation as a property used for purely charitable purposes. Under *Pentecostal Church*, therefore, Council House is entitled to appeal the assessment of taxes directly to the circuit court.

Respondents seek to distinguish *Pentecostal Church*, contending it is limited to situations where the assessment is the product of a "void agency order." *See Local Union No. 124*, 891 S.W.2d at 418–19. The statement in *Local Union No. 124* upon which respondents rely derives from *Buckhorn Rubber Products, Inc. v. Robison*, 763 S.W.2d 690, 691 (Mo.App.1988), where the plaintiff failed to follow the statutory requirements of section 139.031, thereby losing its right to appeal the collector's removal of the protested taxes from a separate account. *Buckhorn*, 763 S.W.2d at 690–91. Because the collector's actions were proper under the statute, the court of appeals ruled the trial court did not err in granting summary judgment in favor of the defendant collector. On appeal, plaintiff directly attacked the assessment itself, arguing that it could avoid administrative channels "when attacking a void administrative order." *Id.* at 691. The court in *Buckhorn* stated, in admitted dicta, that the rule allowing a plaintiff to dispense with administrative remedies and proceed directly to circuit court "may apply to a direct challenge on the assessment itself." *Id.*

Respondents misread by selectivity the meaning of *Local Union No. 124*. As stated above, in *Local Union No. 124* the taxpayer claimed partial exemption under section 137.101, which necessarily involved a question of valuation to be assigned each part of the property. The circuit court was without authority to fix or equalize the assessed value of the property. Reference to *Buckhorn* in *Local Union No. 124* was, therefore, incidental to the holding and reasoning of that case.

Respondents also seek to distinguish *Pentecostal Church* from the present case by noting that *Pentecostal Church* involves an action for a refund pursuant to section 139.031. Respondents' effort is to no avail. This Court has made it clear, in the context of an action for refund of taxes under section 139.031, that a taxpayer need not seek redress exclusively from the board of equalization when the taxpayer does not dispute the valuation of the property or the method used to determine it. *Pentecostal Church*, 737 S.W.2d at 729. It would be illogical not to encompass within that rule the situation presented in the present case. The distinction respondents ask this Court to recognize, namely, the difference between filing a declaratory action for exemption in the circuit court after paying the taxes under protest and filing a declaratory action after assessment but before the taxes come due, is de minimis. Respondents offer no explanation of why such a declaratory action should not proceed as soon as possible after taxes are assessed on the first of January each tax year, a solution which lends only consistency and efficiency to the process. To require Council House to wait until the end of the tax year to pay the taxes under protest, then seek declaratory relief in a refund action, defies logic and lacks any substantive basis in the statutes.

Respondents allege that section 138.430.3 mandates that a taxpayer, as with all assessment appeals, must first seek exemption from taxation at the board of equalization. The allegation is unwarranted. The statute simply permits, but does not require, a taxpayer to appeal directly to the circuit court from a decision of the board of equalization on questions regarding exclusion or exemption from the tax rolls, should the taxpayer have elected to proceed under section 138.430.3, rather than under the holding of *Pentecostal Church*.

In summary, because Council House seeks only a declaration that it is wholly exempt from taxation as a property used for purely charitable purposes, it was entitled to appeal the assessment of taxes directly to the circuit court.

The trial court's judgment as it pertains to the taxes assessed for 1994 is reversed and the cause is remanded for the entry of judgment consistent with this opinion. In all other respects, the judgment is affirmed.

All concur.