**PREMIUM STANDARD FARMS, INC., Appellant–Respondent,**

v.

**LINCOLN TOWNSHIP OF PUTNAM COUNTY and Dana Mathes, Respondents–Appellants.**

No. 79107.

Supreme Court of Missouri, En Banc.

May 27, 1997.

Rehearing Denied June 17, 1997.

Robert Schultz, Mary B. Schultz, St. Louis, for Appellant–Respondent.

Patrick E. Richardson, Green City, for Respondents–Appellants.

Jeremiah W. (Jay) Nixon, Attorney General, James R. Layton, Deputy Chief Counsel, Mark E. Long, Assistant Attorney General, Jefferson City, for Intervenor Respondent–Appellant.

PRICE, Judge.

We are called upon to determine whether Lincoln Township's actions imposing setback and bonding requirements on Premium Standard Farms livestock sewage lagoons and setbacks on its finishing buildings exceed the township's statutorily granted zoning powers. We hold that they do. We also find that Lincoln Township has no power to commence a public nuisance action. We therefore affirm the trial court's judgment.

## I. FACTS

Appellant/Plaintiff Premium Standard Farms, Inc. (Premium), is a Missouri corporation engaged primarily in the business of hog farming. On April 6, 1994, Premium completed the purchase of 3084 acres of farm land located in Lincoln Township of Putnam County. Premium named the acreage White Tail Farm. Premium erected 96 hog barns and 12 hog waste lagoons on 12 separate sites consisting of one lagoon and 8 barns each. Each hog barn has a concrete foundation, partial wooden frame wall with metal siding, and a metal roof. The barns measure 212 feet by 41.3 feet. The barn floors are slatted concrete. Hog manure falls through the floor and into a shallow holding area. Water flushes the waste every two hours into an adjacent lagoon. Each lagoon is greater than 300 feet long and 280 feet wide. The lagoons have a volume of approximately 58 acre feet and are constructed of earthen walls approximately 24 feet high containing clay liners at least one foot thick. They are equipped with intake pipes for receiving the waste from the hog barns and exit pipes through which water is pumped to fertilize Premium's hay fields. The lagoons store and break down the hog waste.

On June 30, 1994, Respondent/Defendant Lincoln Township adopted what it designated "Comprehensive Plan and Zoning Regulations for Lincoln Township." The land owned by Premium was zoned A–1 (Agricultural) under the regulations. The regula-

tions permitted livestock sewage lagoons systems and livestock feedlots ("livestock feedlot" defined as 100 cattle per acre, 1000 hogs per acre, 1000 sheep per acre, 1000 poultry per acre; "livestock sewage lagoon" undefined). The regulations required minimum setbacks of 5,280 feet from adjacent residences or dwellings for lagoon systems with a capacity of twenty acre feet or more and cash or surety bonds to guarantee proper closure and post-closure care of sewage lagoons. The regulations imposed a bonding requirement of over $750,000 per lagoon for a total of over $9,000,000. The regulations also required minimum setbacks of 1,400 feet from adjacent residences or dwellings for livestock feedlots. An amended plan adopted by Lincoln Township on November 15, 1995, continues the setback and bonding requirements of the 1994 regulation.

On July 13, 1994, the code enforcement officer for Lincoln Township, Dana Mathes, sent a letter to Premium reminding Premium of the procedures set forth in the 1994 regulations. On September 28, 1994, Mathes inspected Premium's property and observed 72 feedlots and nine lagoons. The lagoons are located closer than 5,280 feet from adjacent residences or dwellings.

The statute cited by Lincoln Township as authority to enact the regulations at issue is section 65.677, RSMo, which states:

> For the purpose of promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of the township, to conserve and protect property and building values, to secure the most economical use of the land, and to facilitate the adequate provision of public improvements all in accordance with a comprehensive plan, the township board of any township to which the provisions of sections 65.650 to 65.700 are applicable shall have power after approval by vote of the people to regulate and restrict, by order of record, in the unincorporated portions of the township, the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, indus-

try, residence or other purposes, including areas for agriculture, forestry, and recreation. The provisions of sections 65.650 to 65.700 shall not be exercised so as to impose regulations or to require permits with respect to land, used or to be used for the raising of crops, orchards or forestry or with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures. The powers granted by sections 65.650 to 65.700 shall not be construed:

> (1) So as to deprive the owner, lessee or tenant of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted;

> (2) So as to deprive any court of the power of determining the reasonableness of regulations and power in any action brought in any court affecting the provisions of sections 65.650 to 65.700 or the rules and regulations adopted thereunder;

> (3) To authorize interference with such public utility services as may have been or may hereafter be authorized or ordered by the public service commission or by permit of the county commission, as the case may be.

On July 29, 1994, Premium commenced this action for a declaratory judgment and injunction against Lincoln Township to prevent enforcement of its regulations. Lincoln Township counterclaimed for enforcement of its regulations and for relief based on the theory of public nuisance. Premium filed three motions for summary judgment. The trial court entered summary judgment in favor of Premium and dismissed Lincoln Township's counterclaims. Although the parties raise numerous issues on appeal, our decision is based upon the lack of statutory authority for Lincoln Township to promulgate the regulation at issue and to pursue a public nuisance action.

## II. STANDARD OF REVIEW

■ Summary judgment is proper only when the moving party has demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(3). Because the propriety of sum-

mary judgment is purely an issue of law, our review is essentially *de novo*. The record on appeal from summary judgment is reviewed in the light most favorable to the party against whom judgment was entered.

### III. JURISDICTION

■ Lincoln Township (Township) challenges the jurisdiction of this Court and the trial court to adjudicate the issues presented. Township claims Premium has failed to exhaust its administrative remedies because it has failed to pursue an appeal for a variance permit to the Lincoln Township Board of Zoning Adjustment before seeking review by the courts. Premium contends that it did not need to exhaust these administrative remedies because it raises solely a legal challenge to the authority of the township to impose the regulations in question.

■ Exhaustion of administrative remedies is generally required before a court may assume jurisdiction of a matter where a remedy is available through administrative procedures. *Council House Redevelopment Corp. v. Hill*, 920 S.W.2d 890, 892 (Mo. banc 1996) ("As a general rule, courts will refrain from acting until the litigants have exhausted all available administrative remedies provided by statute."). This principle is founded upon the theory that agencies have special expertise and a factual record can be developed more fully by pursuing the designated channels for relief within the agency. The issue also may be resolved through the procedures set forth by the agency for resolution of complaints, thereby rendering unnecessary review by the courts.

■ Nevertheless, several exceptions to the general requirement of exhaustion have been recognized by the courts of this state. Where no adequate remedy lies through the administrative process, the court will not require exhaustion. *Glencoe Lime & Cement Co. v. City of St. Louis*, 341 Mo. 689, 108 S.W.2d 143, 144 (1937); *City of St. Ann v. Elam*, 661 S.W.2d 632 (Mo.Ct.App.1983). Where the authority of the political subdivision to impose particular regulations is challenged, the courts may review the issue, although the parties have not pursued their complaint through the administrative process

set forth in the zoning regulations. *Missouri Rock, Inc. v. Winholtz*, 614 S.W.2d 734, 738 (Mo.Ct.App.1981). And where the validity of agency rules or the threatened application thereof is at issue, an action for a declaratory judgment may be maintained against agencies "whether or not the plaintiff has first requested the agency to pass upon the question presented." Rule 87.02(c). This Court has held that exhaustion of administrative remedies is unnecessary when the authority of a municipal corporation to enact certain regulations under the statutory enabling acts granting it the power to zone is challenged. *State ex rel. Kramer v. Schwartz*, 336 Mo. 932, 82 S.W.2d 63, 69 (Mo.1935).

Township argues that *Westside Enterprises, Inc. v. City of Dexter*, 559 S.W.2d 638 (Mo.Ct.App.1977), and similar cases stand for the proposition that attacks on the application or validity of zoning regulations must be pursued in the first instance through the administrative procedures set forth by the zoning authority. The preliminary issue in *Westside Enterprises*, however, was whether the land at issue was actually zoned residential as opposed to commercial. The court observed that if the issue had been appealed through the administrative procedures set forth by statute, determination of the classification could have been made and might have resolved the entire controversy without resort to the courts. The factual issue of whether the zoning authority had placed the tract in a residential or commercial zone was a key question presented. The precise purpose underlying the requirement of exhaustion of administrative remedies would have been served by pursuing an appeal through the administrative channels set forth by statute.

Unlike that case, however, the issue presented in this case is not at all dependent upon further development of the record through administrative procedures. The facts have been admitted as to the nature of the hog confinement facilities and sewage lagoons. Moreover, Township has made clear in Count I of its counterclaim that feedlots and lagoons like those of Premium fall within the purview of its zoning regulations. Premium challenges the authority of

Township to impose such regulations. The only issue to be determined is whether regulation of such structures is regulation of farm structures or farm buildings, an action township's are specifically not authorized to take under section 65.677, RSMo.

This is a legal issue. "Because the question ... poses no factual questions or issues requiring the special expertise within the scope of the [administrative agency's] responsibility, but instead proffers only questions of law clearly within the realm of the courts, the doctrine of exhaustion does not apply in the present case. See 73 C.J.S. Public Administrative Law and Procedure Section 40 ('A failure to exhaust administrative remedies may be justified when the only or controlling question is one of law, at least where there is no issue essentially administrative, involving agency expertise and discretion, which is in its nature peculiarly administrative....')." *Council House Redevelopment Corporation v. Hill,* 920 S.W.2d 890, 895 (Mo. banc 1996). This issue requires no exhaustion of administrative remedies. *Cf. Cervantes v. Bloom,* 485 S.W.2d 446, 448 (Mo.Ct.App.1972); *N.G. Heimos Greenhouse, Inc. v. City Of Sunset Hills,* 597 S.W.2d 261, 263, n. 4 (Mo.Ct.App.1980).

## IV. TOWNSHIP POWERS

Premium challenges Township's attempted regulation of its finishing buildings and sewage lagoons, asserting they are "farm buildings" and/or "farm structures" exempt from Township's general zoning power. Premium also contends Township may not maintain an action for public nuisance.

It is an established principle that local governments "have no inherent powers but are confined to those expressly delegated by the sovereign and to those powers necessarily implied in the authority to carry out the delegated powers. This rule of relatively strict construction of enabling statutes has been known as Dillon's Rule, and although it has suffered some debilitation in zoning cases, it nevertheless retains considerable vitality." Robert H. Freilich, *Missouri Law of Land Use Controls: with National Perspectives,* 42 UMKC L. Rev. 1, 27 (1973). This Court has held:

[C]ounties, like other public corporations, "can exercise the following powers and no others: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied." We have repeatedly approved this quotation.

*Lancaster v. County of Atchison,* 352 Mo. 1039, 180 S.W.2d 706, 708 (banc 1944) (quoting Dillon on Municipal Corporations, 3rd Ed., Section 89; and citing *State ex rel. City of Blue Springs v. McWilliams,* 335 Mo. 816, 74 S.W.2d 363 (banc 1934); *State ex rel. City of Hannibal v. Smith,* 335 Mo. 825, 74 S.W.2d 367, 372 (banc 1934)).

Section 65.270, RSMo 1994, of the Revised Missouri Statutes specifically states that "[n]o township shall possess any corporate powers, except such as are enumerated or granted by this chapter, or shall be specially given by law, or shall be necessary to the exercise of the powers so enumerated or granted." The two issues presented here concern the powers granted to Lincoln Township by section 65.677, already set out, section 65.260 which allows townships "[t]o sue and be sued, in the manner provided by the laws of this state," and section 65.697, which permits enforcement of township regulations.

### A. Section 65.677

▪ Although section 65.677, RSMo provides townships authority to set aside land for agricultural use, it specifically states that the zoning powers granted to townships by sections 65.650 to 65.700 "shall not be exercised so as to impose regulations or to require permits ... with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures." Premium contends in its motions for summary judgment that the setback requirements for its finishing buildings and sewage lagoons imposed through Township's zoning regulations are attempts to regulate "farm structures" and "farm buildings" in

contravention of section 65.677's specific exception to the general grant of zoning power. They also claim the bonding requirements for sewage lagoons are not permitted because the enabling act does not expressly grant townships the power to impose bonds.

In the absence of ambiguity, statutes are given their plain and ordinary meaning relying on the actual words used. *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. banc 1993). The plain and ordinary meaning of "farm" includes the raising of livestock. *Wesbster's Third New International Dictionary*, 824 (1981) ("a plot of land devoted to the raising of domestic or other animals"; "to engage in the business of raising crops or livestock"); *Black's Law Dictionary*, 606 (6th Ed.1990) ("A tract of land devoted to agriculture, pasturage, stock raising, or some allied industry. Includes dairy, stock, and poultry farms."). The legislature has defined "farming" for purposes of its "Farming Corporations" chapter as meaning the use or cultivation of "land for the production of (a) agricultural crops; (b) livestock or livestock products; (c) poultry or poultry products; (d) milk or dairy products; or (e) fruit or other horticultural products, provided; however, 'farming' shall not include a processor of farm products or a distributor of farming supplies contracting to provide spraying, harvesting or other farming services." Section 350.010(6), RSMo 1994. "Farm products" is also defined in section 400.9–109(3), RSMo 1994, as "[g]oods" that "are crops or livestock or supplies used or produced in farming operations or if they are products of crops or livestock in their unmanufactured states (such as ginned cotton, woolclip, maple syrup, milk and eggs), and if they are in the possession of a debtor engaged in raising, fattening, grazing or other farming operations."

In determining whether a concrete pad was a structure for purposes of municipal regulation, the court of appeals has defined a structure as "a thing built, erected, or fabricated as a building, a dam, or a bridge. Yet, in its broadest and widest sense 'structure' means any construction." *Easy Living Mobile Manor, Inc. v. Eureka Fire Protection District*, 513 S.W.2d 736, 739 (Mo.Ct.App.

1974). Because the finishing buildings and sewage lagoons are structures and are incident to the raising of livestock, which is farming, they are farm structures. *Accord Kuehl v. Cass County, Iowa*, 555 N.W.2d 686 (Iowa 1996) (hog confinement facilities are farm structures exempt from county zoning); *Thompson v. Hancock County*, 539 N.W.2d 181 (Iowa 1995) (large hog barns are farm structures exempt from county zoning); *DeCoster v. Franklin County*, 497 N.W.2d 849 (Iowa 1993) (hog lagoons are farm structures exempt from county zoning).

Nevertheless, Township argues that the statutory language is ambiguous. It asserts that a plain language approach is improper and that summary judgment is inappropriate because a genuine issue of fact exists as to whether such buildings are agricultural buildings as opposed to farm buildings. Township contends that agricultural uses may be regulated, though farm buildings and structures may not, and that Premium's operation is agriculture as opposed to farming. Township points to language in section 65.677 which states that townships may "regulate and restrict, by order of record, in the unincorporated portions of the township, the height, number of stories, and size of buildings, the percentage of lots that may be occupied, the size of yards, courts and other open spaces, the density of population, the location and use of buildings, structures and land for trade, industry, residence or other purposes, including areas for agriculture, forestry, and recreation." Township asserts that this language permits regulation of agricultural land and that because Premium's operation is agricultural, Township may regulate Premium's buildings and appurtenances.

Although there is authority from other jurisdictions holding agriculture and farming to be distinct activities, we need not address that issue here. We will not create an ambiguity in order to depart from the plain meaning of a statute or ordinance. *Estate of Thomas*, 743 S.W.2d 74, 76 (Mo. banc 1988). A plain reading of section 65.677 reveals no ambiguity. While the statute generally grants the township power to restrict certain "areas for agricultural, forestry, and recre-

ation" uses, it does not authorize the regulation of agricultural uses, as Township contends. Additionally, the statute specifically provides that the zoning power "shall not be exercised so as to impose regulations or to require permits ... with respect to the erection, maintenance, repair, alteration or extension of farm buildings or farm structures." This is a clear and direct limitation upon more general powers otherwise granted.

We hold that the livestock sewage lagoons and the livestock finishing buildings at issue here are "farm structures" within the meaning of section 65.677 and that setback and bonding requirements are not authorized and are, therefore, impermissible. There is no genuine issue of material fact concerning the nature and composition of the lagoons and finishing buildings. Premium is entitled to judgment as a matter of law.

### B. Public Nuisance

■ Township counterclaimed for enforcement of its comprehensive zoning plan based upon its statutory powers to pursue equitable relief. It also sought an injunction to stop further development of White Tail Farm and to enjoin further use of the facilities already established based upon the theory of public nuisance.

The issues are whether Lincoln Township has been granted express power to bring a public nuisance action or, alternatively, whether the power to prosecute a nuisance action is necessary to the exercise of some express township power. As we have already stated, townships and other local governments possess only those powers expressly granted or that are necessary to execute the express powers so granted.

No express authority to prosecute a nuisance action has been granted townships. Counties have been granted the power to pursue equitable relief under certain circumstances to abate a public nuisance, sections 67.410, 263.262, RSMo 1994, as have cities, towns and villages, sections 71.285, 77.530, 77.560, 79.370, 79.380, 79.383, 80.090, RSMo 1994. Townships have been granted no such authority. The legislature's grant of such authority to some local government entities and its failure to do so in the townships'

enabling act indicate an intention to withhold the power. *Potashnick Truck Service, Inc. v. City of Sikeston*, 351 Mo. 505, 173 S.W.2d 96, 100 (1943) (municipality, itself, has direct power summarily to abate nuisances); *State ex rel. Thrash v. Lamb*, 237 Mo. 437, 141 S.W. 665, 668 (banc 1911) ("A court of equity has jurisdiction to restrain existing or threatened public nuisances by injunction, at the suit of the Attorney General ... and at the suit of the state, or the people, or municipality, or some proper officer...."); *City of Lee's Summit v. Browning*, 722 S.W.2d 114 (Mo.Ct.App.1986).

Nor is the power to prosecute a public nuisance action "necessarily or fairly implied in or incident to the powers expressly granted" townships in chapter 65. The sections relating to the issue are sections 65.260, 65.677, 65.697. Section 65.260 permits a township to "sue and be sued in the manner provided by the laws of this state." Section 65.677 merely permits townships to impose regulations for the purpose of "promoting health, safety, morals, comfort or the general welfare of the unincorporated portion of the township, to conserve and protect property and building values, to secure the most economical use of the land, and to facilitate the adequate provision of public improvements" through its comprehensive plan and zoning regulations. ·

Similarly, section 65.697 merely provides townships the power to bring an action to enforce the zoning regulations. Section 65.697(2) specifically provides:

In the event [any regulation is violated], the township board, the township planning commission, the township zoning commission, the prosecuting attorney, or any officer or official appointed or designated under the provisions of Section 65.665, or the owner of any private property or any public body the property of whom or which is or may be affected by any such violation, may institute in the circuit court of the county, any appropriate action or proceedings to prevent such [violation].

Section 65.697(2) only applies to "such unlawful" and "illegal" acts as are declared misdemeanors in section 65.697(1), that is, actions

which are in violation of the comprehensive plan and zoning regulations otherwise properly promulgated. Thus, power to pursue enforcement of township regulations is granted. Power to advance the public interests of the township's citizens through a public nuisance action is not.

Township's counterclaim seeking an abatement of Premium's operations was properly dismissed.

## CONCLUSION

The judgment is affirmed.

All concur.