**WILLAMETTE INDUSTRIES, INC., Appellant,**

v.

**THE CLEAN WATER COMMISSION OF THE STATE OF MISSOURI, and Thomas Herman in his Official Capacity as Chairman of the Clean Water Commission of the State of Missouri, and The Missouri Department of Natural Resources, and Stephen Mahfood in his Official Capacity as Director of the Missouri Department of Natural Resources, Respondents.**

**No. WD 57874.**

Missouri Court of Appeals, Western District.

Nov. 21, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 26, 2000.

---

David Shorr, Jefferson City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Deborah J. Neff, William J. Bryan IV, Asst. Attys. Gen., Jefferson City, for respondent.

HOLLIGER, Presiding Judge.

Willamette Industries ("Willamette") appeals the dismissal of its petition for Declaratory Judgment, Temporary Restraining Order, and Preliminary and Permanent Injunction. Willamette claims that the imposition of certain special conditions to its storm water permit was illegal and unauthorized. The issue is whether Willamette's failure to exhaust its administrative remedies before the Missouri Clean Water Commission supported the circuit court's dismissal of its petition.

**The Parties**

Willamette is an Oregon Corporation operating a wood recovery facility in Wayne County. The facility is designed to produce chips from whole logs and wood residuals. The product produced is then shipped to Willamette's paper mill in Kentucky. Willamette does no logging at this facility. The raw product that it processes is purchased on the open market and comes from several states including Missouri.

The defendants sued by Willamette are the Missouri Clean Water Commission (Commission), its Chairman, Thomas Herman (Herman), the Missouri Department of Natural Resources (MDNR), and its Director, Stephen Mahfood (Mahfood). The Commission is the water contaminant control agency for the State of Missouri. § 644.021.1, RSMo 1994.[1]

1. All statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise indicated.

2. §§ 644.006 to 644.141, RSMo as amended.

3. The federal Clean Water Act, 33 U.S.C. § 1251, et seq., provides that a state may request Environmental Protection Agency authorization to administer a state program equivalent to the pollutant control require-

The Commission's statutory charges include: (1) general supervision of the administration and enforcement of the Missouri Clean Water Law,[2] (2) issuing, renewing, revoking, modifying or denying permits to prevent, control or abate water pollution or violations of the Missouri Clean Water Law or federal water pollution control laws.[3]

MDNR is established in RSMo. Chapter 640 as Missouri's general environmental agency charged with administering "the programs assigned to the Department relating to environmental control and the conservation and management of natural resources." The Commission is structurally assigned to MDNR. § 640.010.3 RSMo, Cum.Supp.1999 as amended.

**The Permit Process**

The Missouri Clean Water Law was enacted, in part, to protect public health, public welfare, wildlife, fish and aquatic life, domestic, agricultural, industrial, recreational and other use of Missouri's water. § 644.011. Any person who wishes to "build, erect, alter, replace, operate, use or maintain any water contaminant or point source in this state" must have a permit. § 644.051.2. All parties agree that Willamette is required to have a storm water permit to operate its facility in Wayne County. 10 CSR 20–6.200(2)(c)1.A.[4]

On May 21, 1999, Willamette was issued a new storm water permit. It objects here to special conditions 16 and 17 of the permit and to the limitation of the permit to a period of one year.

ments of federal law. Missouri has received such authorization. § 644.011, RSMo.

4. Willamette's permit is a "site specific" or "individual operating permit" rather than a general permit. For a description of the difference see *Scott Tie Co., Inc. v. Missouri Clean Water Com'n*, 972 S.W.2d 580 (Mo.App. 1998). Generally a site-specific permit requires more intensive regulation and monitoring.

## Special Condition 16

### *(Training Requirement)*

Special condition 16 in Willamette's permit would require it to supply MNDR with proof that the entities with which Willamette contracts to harvest timber, in and outside of Missouri, as well as on federally owned land, have attended the Missouri Professional Timber Harvester Program. Willamette would be required to provide this proof within twelve months of signing a contract to do business.

## Special Condition 17

### *(Harvest Location Condition)*

Special Condition 17 would mandate Willamette to provide MDNR with legal descriptions of harvest locations for timber harvests, past and future, including those on out-of-state land and federally owned lands.

On June 23, 1999, Willamette filed a petition for Declaratory Judgment, Temporary Restraining Order, Preliminary Injunction and Permanent Injunction ("petition") in the Cole County Circuit Court. The petition generally sought both a declaration that the two special conditions and one-year permit period are illegal, and injunctive relief prohibiting the inclusion of the two conditions in its permit and directing the agency to issue a permit for some reasonable period longer than one year. After the granting of a temporary restraining order, MDNR, the Commission and the individual defendants filed motions to dismiss alleging that Willamette was required to exhaust its administrative remedies. On September 9, 1999, Judge Thomas Brown entered an order dismissing Willamette's petition without prejudice. The trial court found that, as a general rule, administrative remedies must be exhausted before contesting an agency action in the courts. The court also found that Willamette's claim did not fall within a narrow exception where constitutional challenges can be decided without resolution of factual disputes.

## STANDARD OF REVIEW

When reviewing the propriety of the dismissal of a petition, the court examines the pleading allowing the broadest intendment, treating all facts alleged as true and construing the allegations in favor of the pleader, to determine whether they invoke principles of substantive law which would entitle the plaintiff to relief. *Hagely v. Board of Educ. Of Webster Groves School District*, 841 S.W.2d 663, 665 (Mo.banc 1992). Conclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted. *Cady v. Hartford Accident and Indemnity Co.*, 439 S.W.2d 483, 485–86 (Mo.1969). The test for the sufficiency of a petition for declaratory judgement is not whether plaintiff is entitled to the relief requested, but whether he is entitled to a declaration of rights or status on the pleaded facts. *Cooper v. State*, 818 S.W.2d 653, 655 (Mo.App.1991). Affidavits and exhibits offered by a plaintiff in response to a motion to dismiss may be consulted to determine the intent of a pleading. *Missourians for Separation of Church and State v. Robertson*, 592 S.W.2d 825, 835 (Mo.App.1979).

## DECLARATORY JUDGMENTS AND ADMINISTRATIVE AGENCY ACTIONS

The power to issue declaratory judgments clearly extends to the validity of rules adopted by administrative agencies. § 536.050.1, RSMo, Cum.Supp.1998. Section 536.010(4) defines "rule" as an "agency statement of general applicability that implements, interprets, or prescribes law or policy, or that describes the organization, procedure, or practice requirements of any agency.…" To be valid, an administrative rule must be promulgated pursuant to the rulemaking procedure set out in § 536.021 RSMo, Cum.Supp.1997. *Baugus v. Director of Revenue*, 878 S.W.2d 39, 42 (Mo.banc 1994). Willamette con-

tends that the two conditions and the change in permit length described above constitute rulemaking without compliance with the requirements of Chapter 536. The respondents dispute this contention, but argue that even assuming Willamette's argument is valid, Willamette was still required to exhaust its administrative remedies before the Commission prior to seeking judicial intervention.

■ The doctrine of exhaustion of administrative remedies "... [i]s founded upon the theory that agencies have special expertise and a factual record can be developed more fully by pursuing the designated channels for relief within the agency. The issue may also be resolved through the procedures set forth by the agency for resolution of complaints, thereby rendering unnecessary review by the courts." *Premium Standard Farms v. Lincoln Tp.,* 946 S.W.2d 234, 237 (Mo.banc 1997). Thus, where an administrative remedy is available, a court will generally require exhaustion before assuming jurisdiction. *Council House Redevelopment Corp. v. Hill,* 920 S.W.2d 890, 892 (Mo.banc 1996). Exceptions to the exhaustion requirement have been recognized by the courts and at times, as herein, have been enacted by the legislature. Thus the General Assembly has stated that in declaratory judgment actions attacking the validity of administrative rules under § 536.050.1, an administrative remedy need not be exhausted if:

(1) The administrative agency has no authority to grant the relief sought or the administrative remedy is otherwise inadequate; or

(2) The only issue presented for adjudication is a constitutional issue or a question of law; or

(3) Requiring the person to exhaust any administrative remedy would result in undue prejudice because the person may suffer irreparable harm if unable to secure immediate judicial consideration of the claim. . . .

§ 536.050.2(1)(2)(3), RSMo Cum.Supp. 1998. Willamette argues that its declarato-

ry judgment action falls within each of these exceptions. Respondents counter that Willamette's claim does not fall within any of these statutory exceptions to the exhaustion of administrative remedies doctrine. We agree that the trial court properly dismissed Willamette's petition, but we do so for a more fundamental reason.

■ All of the statutory exceptions to the exhaustion requirement deal with actions attacking the validity of "rules." Section 536.050.1 itself deals with the application of declaratory judgments to actions "respecting the validity of rules, or of threatened applications thereof...." A "rule" is a statement of policy "of general application and future effect" set forth without regard to specific facts. *Missouri Health Care Ass'n. v. Missouri Dept. of Social Services,* 851 S.W.2d 567, 569 (Mo. App.1993). A rule is a pronouncement that affects individual rights "in the abstract." *Baugus,* 878 S.W.2d at 42. Respondents argue that conditions placed upon permits never affect rights "in the abstract." A permit application, they argue, presents a discrete set of facts and the permit terms may be challenged both procedurally and substantively before the Clean Water Commission and ultimately before the courts through the process of judicial review. Section 536.010(4) not only defines what a "rule" is but also what it is not. "The term ... does not include: ... (d) a determination, decision, or order in a contested case." A "contested case" means a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after hearing." Appeals from conditions in issued permits are conducted as contested cases. § 644.051.6; 10 CSR 20–6.020(6)(D).

■ Willamette's petition does not seek a declaration in advance of whether Respondents have adopted a policy that amounts to a rule without following proper procedures. *Missouri Health Care Ass'n,* 851 S.W.2d at 570. Rather it attacks the

inclusion of certain conditions upon its specific site-operating permit. Likewise, the remedy provided in RSMo. § 527.010 et seq. (the Declaratory Judgment Act) is subject to the requirement of exhaustion of administrative remedies. *Farm Bureau Town & Country Ins. v. Angoff,* 909 S.W.2d 348, 354 (Mo.banc 1995).

"The exhaustion requirement is rooted in sound policy, as well as in both the state constitution and statutes. Only 'final decisions, findings, rules and orders' of an administrative agency are subject to review as provided by law. *Mo. Const. Art. V, § 18.* The relevant statute, § 536.100, provides for judicial review only by a person who has exhausted all administrative remedies provided by law...." *Id.* at 352. Willamette's appeal to the Clean Water Commission concerning the issues complained of herein, and others not raised in this matter, remains pending. We cannot assume that the conditions and terms complained of will be in the final permit after the Commission has conducted a full hearing and considered Willamette's arguments. The trial court properly dismissed the petition. The judgment is affirmed.

BRECKENRIDGE and SMART, JJ., concur.