Daniel HENDRICKS and Katherine Hendricks, Appellants,

v.

The CURATORS OF the UNIVERSITY OF MISSOURI, et al., Respondents.

No. WD 70398.

Missouri Court of Appeals, Western District.

April 27, 2010.

---

Kathleen A. McNamara, Esq., and Frederick G. Thompson, IV, Esq., Kansas City, MO, for appellant.

Susan F. Robertson, Esq., Kansas City, MO and Wade H. Ford, Jr., Esq., Columbia, MO, for respondent.

Before: LISA WHITE HARDWICK, P.J., and JAMES M. SMART, JR. and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Plaintiffs–Appellants Daniel and Katherine Hendricks filed a petition seeking damages from the Curators of the University of Missouri, among others, for alleged negligence relating to medical care provided to Daniel Hendricks when he was a patient at the University Hospital in Columbia. The circuit court dismissed the Hendrickses' claims against the Curators on the basis of sovereign immunity, and certified its judgment as final.

The Hendrickses appeal. In their first Point Relied On, they argue that the Curators waived sovereign immunity by adopting a self-insurance plan which provides coverage for the Hendrickses' claims. In their second Point, the Hendrickses contend that the court erroneously treated the Curators' motion to dismiss as a motion for summary judgment, and that the motion to dismiss should have been overruled under the standards applicable thereto. We affirm.

### Standard of Review

We review a trial court's decision to grant a motion to dismiss de novo. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008).

"A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It

assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case."

*State ex rel. Henley v. Bickel,* 285 S.W.3d 327, 329 (Mo. banc 2009) (citation omitted).

## Analysis

### I.

 Under § 537.600,[1] sovereign immunity generally protects public entities from liability for negligent acts. "The Curators of the University of Missouri 'is a public entity with the status of a governmental body and, as such, is immune from suit for liability in tort in the absence of an express statutory provision.'" *Langley v. Curators of the Univ. of Mo.,* 73 S.W.3d 808, 811 (Mo.App. W.D.2002) (*quoting Brennan ex rel. Brennan v. Curators of the Univ. of Mo.,* 942 S.W.2d 432, 434 (Mo.App. W.D.1997)).[2]

Two exceptions to sovereign immunity exist, neither of which is applicable under these facts. §§ 537.600.1(1), (2).[3] Besides the exceptions to sovereign immunity contained in § 537.600.1, § 537.610.1 provides that a public entity may waive sovereign immunity for tort claims by the purchase of liability insurance, or the adoption of a self-insurance plan, to the extent of the coverage provided in the insurance policy or self-insurance plan.

At the time of the alleged injury to Mr. Hendricks, the Curators had adopted a self-insurance plan which provided, subject to the limits of liability and other conditions of the plan, that:

> The Employer ... will pay on behalf of the covered person all sums which the covered person shall become legally obligated to pay as damages because of injury to the person or property of a patient arising out of the operations of a medical facility or because of injury arising out of the rendering of or failure to render, while the Plan is in effect, professional services by the covered person, or by any person for whose acts or omissions such covered person is legally responsible, performed in the practice of the individual covered person's profession including service by the individual covered person as a member of a formal accreditation or similar professional board or committee of a medical facility or professional society.

The plan defined "Employer" to mean "The Curators of the University of Missouri, a public corporation, including all its campuses, divisions, branches and parts." "Covered persons" was defined to include "[t]he Employer," "[i]ndividual members of the Board of Curators of the University of Missouri and the Board of Curators of the University of Missouri," as well as "[a]ll employees." The self-insurance plan also expressly provided, however, that it not be construed as a waiver of sovereign immunity:

---

1. All statutory references are to the RSMo 2000 updated through the 2009 Cumulative Supplement unless otherwise indicated.

2. Section 172.020 provides that "the state university is hereby incorporated and created as a body politic and shall be known by the name of 'The Curators of the University of Missouri,' and by that name shall have perpetual succession, power to sue and be sued, complain and defend in all courts."

3. The exceptions relate to injuries caused by a public employee's use of a motor vehicle and to injuries directly resulting from the dangerous condition of a public entity's property.

Nothing in the Plan shall be construed as a waiver of any governmental immunity of the Employer, the Board of Curators of the University of Missouri nor any of its employees in the course of their official duties.

Although the Curators had adopted a self-insurance plan whose coverage clause is apparently broad enough to apply to the Hendrickses' claims, the express proviso that the plan would not waive the Curators' sovereign immunity defeats any waiver argument. Numerous cases have applied such non-waiver provisions in governmental entities' insurance policies, and held that immunity was preserved despite the existence of insurance coverage which might otherwise fall within § 537.610.1. Thus, in *State ex rel. Board of Trustees of City of North Kansas City Memorial Hospital v. Russell*, 843 S.W.2d 353 (Mo. banc 1992), a city-owned hospital had purchased liability insurance which contained an endorsement explicitly disclaiming coverage for "any claim barred by the doctrine[ ] of sovereign immunity," and declaring that "[n]othing in this policy . . . shall constitute any waiver of whatever kind of the[ ] defense[ ] of sovereign immunity." *Id.* at 360. The Supreme Court held that "[t]he endorsement disclaiming coverage of any claim barred by the doctrine of sovereign immunity avoids any waiver of sovereign immunity" which might otherwise have resulted from the purchase of liability insurance. *Id.*[4]

Later decisions have followed *Russell*, and held that an express non-waiver provision in a liability insurance policy purchased by a governmental entity defeats any waiver of sovereign immunity under § 537.610.1. *See, e.g., Topps v. City of Country Club Hills*, 272 S.W.3d 409, 417–18 (Mo.App. E.D.2008); *Conway v. St. Louis County*, 254 S.W.3d 159, 167 (Mo. App. E.D.2008); *Parish v. Novus Equities Co.*, 231 S.W.3d 236, 246 (Mo.App. E.D. 2007); *State ex rel. Ripley County v. Garrett*, 18 S.W.3d 504, 508–09 (Mo.App. S.D. 2000);[5] *Casey v. Chung*, 989 S.W.2d 592, 594 (Mo.App. E.D.1998).

In *Langley*, we applied these cases to hold that the very self-insurance plan at issue here did not effect a waiver of the Curators' sovereign immunity:

A public entity does not waive its sovereign immunity by maintaining an insurance policy where that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity. Since the Curators' self-insurance plan contains such language, Appellant cannot establish that the self-insurance plan gives rise to a waiver of their sovereign immunity.

73 S.W.3d at 811–12 (citing, *inter alia*, *Russell*, *Ripley County*, and *Casey* ).

The Hendrickses argue that we should disregard *Langley's* holding and address the effect of the non-waiver provision in the Curators' self-insurance plan anew, because the appellant in *Langley* apparently did not seriously contest whether the self-insurance plan waived the Curators' sovereign immunity, but instead focused her arguments on the Curators' purchase of a separate excess liability insurance policy. *See id.* at 812 ("Recognizing that sovereign immunity was expressly retained by the

---

4. While *Russell* involved a possible waiver of the immunity of a municipal entity under § 71.185, the Court held that the language of §§ 71.185 and 537.610.1 did not materially differ. 843 S.W.2d at 360; *see also Conway v. St. Louis County*, 254 S.W.3d 159, 167 n. 5 (Mo.App. E.D.2008) (holding *Russell* applica-

ble to case involving § 537.610); *Brennan*, 942 S.W.2d at 436 (same).

5. Overruled on other grounds, *Amick v. Pattonville–Bridgeton Terr. Fire Prot. Dist.*, 91 S.W.3d 603 (Mo. banc 2002).

Curators in their self-insurance plan, thereby defeating her claim, Appellant seizes on the Curators' purchase of an excess liability insurance policy as a basis for claiming waiver."). We are not persuaded, however, that we can dismiss *Langley*'s explicit holding that the self-insurance plan was ineffective to waive sovereign immunity as mere *dictum*. First, it arguably would have been unnecessary for *Langley* to even address the appellant's arguments as to the effect of the separate excess policy if it had found that the self-insurance plan itself waived immunity to the extent of its coverage. Moreover, the proper interpretation of the self-insurance plan's non-waiver clause was essential to *Langley*'s interpretation of the excess policy on which the appellant there principally relied. *Langley* noted that the excess policy provided that its coverage was generally " 'subject to the same terms, conditions, agreements, exclusions and definitions' as the underlying self-insurance plan," *id.*, and that the excess insurer's payment obligation was contingent on the fact " 'that the underlying insurance also applies, or would apply but for the exhaustion of its applicable limits of insurance.' " *Id.* at 813 (footnote omitted). Thus, the Court's conclusion that the Curators' excess insurance policy did not waive immunity depended in significant degree on the Court's interpretation of the self-insurance plan: "The self-insurance plan expressly retains the Curators' sovereign immunity, and the language of the excess liability insurance policy incorporates that provision by reference." *Id.*

 The Hendrickses also argue that *Langley*'s interpretation of the non-waiver provision of the Curators' self-insurance plan was erroneous, and that we should therefore disregard (or, more properly, overrule) it. First, the Hendrickses argue that the phrase "in the course of their official duties" in the non-waiver clause limits the scope of the Curators' preservation of sovereign immunity. We cannot agree that the phrase "in the course of their official duties" applies to all three categories of insureds listed in the non-waiver provision: "the Employer," "the Board of Curators," and "its employees." To the contrary, the phrase appears directly after the reference to "employees," and is properly interpreted to apply only to them under "the long recognized 'last antecedent rule,' which instructs that: 'relative and qualifying words, phrases, or clauses are to be applied to the words or phrase immediately preceding and are not to be construed as extending to or including others more remote.' " *Rothschild v. State Tax Comm'n of Mo.*, 762 S.W.2d 35, 37 (Mo. banc 1988) (citation omitted); *see also Thompson v. Comm. on Legislative Research*, 932 S.W.2d 392, 395 n. 3 (Mo. banc 1996).[6] The Hendrickses' argument based on the phrase "in the course of their official duties" fails, as that phrase is inapplicable to the Curators, who are the only insureds at issue in this appeal.

The Hendrickses also argue that *Langley* "does not correctly apply the law of the cases it relied upon." They argue that the cases upon which *Langley* relies are distinguishable because, in each of them, the "non-waiver" language appeared in an endorsement to an insurance policy, rather than—as here—"buried" in a "Miscellaneous" section of the self-insurance plan itself.

---

**6.** Although frequently used in statutory construction, the last antecedent rule also has been used in contract interpretation. *See e.g., Boatmen's Trust Co. v. Sugden*, 827 S.W.2d 249 (Mo.App. E.D.1992); *Reddi–Wip, Inc. v. Lemay Valve Co.*, 354 S.W.2d 913 (Mo.App. 1962). Rules of contract construction generally apply to insurance policies. *Blair by Snider v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 606 (Mo. banc 2003).

■ The Hendrickses are correct that rules of insurance policy interpretation provide that, "[i]f the language of the endorsement and the general provisions of the policy conflict, the endorsement will prevail, and the policy remains in effect as altered by the endorsement." *Abco Tank & Mfg. Co. v. Fed. Ins. Co.,* 550 S.W.2d 193, 198 (Mo. banc 1977). Unlike the prior cases involving non-waiver clauses in endorsements, here the Hendrickses' argue that the non-waiver provision creates a conflict or ambiguity within the self-insurance plan itself, which must be resolved in favor of coverage (*and* thus in favor of a waiver of immunity).

■ *If* we were to find an ambiguity in the self-insurance plan, there might be some question as to whether that ambiguity should be resolved in favor of coverage (and immunity waiver) under rules of construction applicable to insurance policies generally, or instead resolved against finding a waiver of immunity. The general rule is that "[w]aivers of sovereign immunity"—at least as they appear in statutes—"are . . . strictly construed." *Richardson v. State Highway & Transp. Comm'n,* 863 S.W.2d 876, 882 (Mo. banc 1993). Although *Richardson* applied the strict construction rule to a *statutory* waiver provision, this Court has apparently applied this principle to the interpretation of insurance policies alleged to waive sovereign immunity. *See Casey v. Chung,* 989 S.W.2d 592, 594 (Mo.App. E.D.1998). There may also be a question whether the rules governing interpretation of standard-form policies issued by insurance companies apply to self-insurance plans like the

one at issue here. *See, e.g., Anderson v. Nw. Bell Tel. Co.,* 443 N.W.2d 546, 549 (Minn.App.1989) ("The rules of insurance policy interpretation are not applicable in the context of self-insurance."); *McClain v. Begley,* 457 N.W.2d 230, 232 (Minn.App. 1990) ("a self-insurance plan is not construed strictly against the drafter, as insurance policies are"), *rev'd on other grounds,* 465 N.W.2d 680 (Minn.1991).

■ We need not resolve these issues, however, because we find no ambiguity in the self-insurance plan. The Hendrickses argue that the plan is ambiguous because its coverage clause promises coverage for medical negligence, but the non-waiver clause then takes that coverage away. " 'If a contract promises something at one point and takes it away at another, there is an ambiguity.' " *Burns v. Smith,* 303 S.W.3d 505, 512 (Mo. banc 2010) (citation omitted). Contrary to the Hendrickses' repeated assertions, however, the non-waiver clause does not remove *all* coverage, even for the Curators themselves. It is at least conceivable that the plan provides protection to the Curators for claims that "aris[e] out of the operations of a medical facility" within the meaning of the insuring clause, but which might at the same time fall within one of the two unconditional waivers of immunity found in §§ 537.600.1(1) and (2). The plan also provides coverage for acts of employees. Despite the fact that the plan is inapplicable in this case, it offers coverage in other circumstances, and so the non-waiver clause does not render the self-insurance plan meaningless as the Hendrickses contend.[7]

7. Because we find the self-insurance plan unambiguous, there is no justification for resorting to extrinsic evidence to interpret it.

We recognize that the non-waiver provision appears in an Article of the self-insurance plan titled "Miscellaneous Provisions," in a section entitled "Actions against the Plan." However, while the placement of the non-waiver provision could have been more prominent, we cannot agree with the Hendrickses that this fact alone creates an ambiguity, or would justify our disregard of the non-waiver

## II.

■ The Hendrickses also argue that the trial court erroneously treated the Curators' motion to dismiss as a motion for summary judgment.

"[B]efore a trial court may treat a motion to dismiss as one for summary judgment, when matters outside the pleadings are presented and not excluded, it must notify the parties that it is going to do so and give the parties an opportunity to present all materials pertinent to the motion for summary judgment." ... "A trial court's order will constitute a dismissal, and not a summary judgment, where the record contains no evidence that the court notified the parties that it intended to review pleadings and documents as a summary judgment motion, nor that the court considered matters outside the pleadings."

*Pikey v. Bryant*, 203 S.W.3d 817, 820–21 (Mo.App. S.D.2006) (citations omitted).

■ Although the trial court's Judgment referred to the Curators' motion as one for summary judgment, and stated it was granting that motion, the label the circuit court used is not dispositive. The court did not consider any documents outside the pleadings, nor did it advise the parties that it would be treating the motion as one for summary judgment. Although the court's judgment necessarily addressed the Hendrickses' contentions as to the effect of the self-insurance plan, the Hendrickses' amended petition specifically recites that the plan "is attached hereto as Exhibit A and *incorporated by reference as though fully set forth herein.*" (Emphasis added.) Under Rule 55.12, "[a]n exhibit to a pleading is a part thereof for all purposes." When considering a motion to dismiss for failure to state a claim, "[w]e also consider exhibits attached to the petition ... as part of the allegations." *Armistead v. A.L.W. Group*, 155 S.W.3d 814, 816 (Mo.App. E.D.2005). The fact that the trial court considered the terms of the Curators' self-insurance plan did not convert their motion into one for summary judgment.

■ The Hendrickses also argue that, to the extent the trial court intended to rule on a motion to dismiss, it improperly failed to assume that the allegations of their petition were true. In particular, they point to their allegation "[t]hat at all times herein pertinent the Defendants, and each of them, were either not entitled to or waived the application of sovereign immunity in that each of them was covered by the University of Missouri Medical Professional and Patient General Liability Plan." However, although we treat all of the *factual* allegations in a petition as true, and liberally grant to plaintiffs all reasonable inferences therefrom, "[c]onclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted." *Willamette Indus., Inc. v. Clean Water Comm'n*, 34 S.W.3d 197, 200 (Mo.App. W.D.2000).

The allegation in the Hendrickses' amended petition that the defendants had waived their sovereign immunity because of the self-insurance plan was a legal conclusion that the circuit court was not required to accept as true. The circuit court's dismissal was fully consistent with the procedures and standards applicable to a motion to dismiss.

provision's plain meaning. As with statutes, we must interpret all provisions of an insurance policy together, and adopt a construction which gives meaning to all of the policy's provisions, if possible. *Topps v. City of Coun-* *try Club Hills*, 272 S.W.3d 409, 416 (Mo.App. E.D.2008). We believe the construction adopted by this Court in *Langley*, and reaffirmed today, does just that.

## Conclusion

The circuit court's judgment, dismissing the Hendrickses' claims against the Curators of the University of Missouri, is affirmed.

All concur.