

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| DAVID McCONNELL and CS&L INVESTMENTS, INC., | ) ) ) | |
| Appellants, | ) | WD82865 |
| v. | ) | (Consolidated with WD82872) |
| | ) ) | OPINION FILED: |
| WEST BEND MUTUAL INSURANCE COMPANY, | ) ) | May 19, 2020 |
| | ) | |
| Respondent. | ) | |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Marco A. Roldan, Judge

**Before Division Four:**  Karen King Mitchell, Chief Judge, and
Thomas H. Newton and Lisa White Hardwick, Judges

David McConnell and CS&L Investments, Inc., appeal the dismissal, with prejudice, of their petition and cross-claims, respectively, against West Bend Mutual Insurance Company. Both McConnell and CS&L sought to obtain insurance payments under a commercial lines insurance policy between West Bend and Vangard Security Services, Inc., following an arbitration award entered against CS&L in favor of McConnell for injuries McConnell suffered while on CS&L's property. West Bend sought dismissal of both petitions for failure to state a claim insofar as CS&L was not insured by West Bend's policy. The trial court granted West Bend's motion and dismissed,

with prejudice, the petition and cross-claims against West Bend. McConnell and CS&L bring three points on appeal, all arguing that dismissal was inappropriate because the petition and cross-claims alleged ultimate facts which, if believed, sufficiently stated claims against West Bend. Finding no error, we affirm.

**Background**

The petitions allege that McConnell was a patron of a business owned by CS&L when he was injured by another patron who had previously been ejected from the business by security. At the time, Vangard Security Services, Inc., provided security for CS&L's business under an oral contract. CS&L was insured through a commercial general liability policy issued by Covington Specialty Insurance Group. Vangard was insured through a commercial lines policy issued by West Bend.

McConnell sued both CS&L and Vangard for his injuries. Both CS&L and Vangard tendered their defense to West Bend. West Bend is currently providing defense to Vangard in the underlying litigation. West Bend refused, however, to provide a defense to CS&L on the ground that CS&L was not "an insured" under the West Bend policy. CS&L also tendered its defense to Covington, but Covington refused to defend on the basis of a policy exclusion.

Because neither Covington nor West Bend agreed to defend CS&L, CS&L entered into an agreement with McConnell under § 537.065.[1] CS&L gave notice of the agreement to West Bend, after which, West Bend offered to unconditionally defend CS&L. CS&L declined the offer because of the § 537.065 agreement. Under the § 537.065 agreement, McConnell and CS&L

---

[1] All statutory citations are to the Revised Statutes of Missouri, as updated through the 2018 Supplement. Section 537.065 "authorize[s] a party claiming damages for personal injuries or death to enter into an agreement with a tortfeasor before judgment against the tortfeasor to limit the claim's satisfaction to the tortfeasor's specific assets, including insurance." *Taggart v. Md. Cas. Co.*, 242 S.W.3d 755, 758 (Mo. App. W.D. 2008). These settlements are valid so long as "they are free of fraud and collusion and . . . the amount awarded to the claimant is reasonable." *Id.*

2

submitted McConnell's claims to binding arbitration. Following an evidentiary hearing, the arbitrator issued an award in favor of McConnell and against CS&L in the amount of $3,000,000. McConnell then filed an application, under § 435.400, in the circuit court of Cass County to confirm the arbitration award as a final judgment. The circuit court granted McConnell's application and entered a judgment confirming the arbitration award against CS&L on October 17, 2018.

McConnell thereafter filed an equitable garnishment claim for insurance proceeds under § 379.200 against CS&L, Covington, and West Bend.[2] CS&L filed a cross-claim against both West Bend and Covington (as well as another insurer) for bad faith and breach of the duty to defend, and CS&L filed a third-party petition against Vangard for indemnification.

West Bend sought to dismiss both McConnell's petition and CS&L's cross-claims for failure to state a claim on the ground that CS&L was not "an insured" under West Bend's policy; therefore, neither McConnell's equitable garnishment action nor CS&L's claims for bad faith and breach of the duty to defend could succeed. McConnell and CS&L filed a joint motion in opposition to West Bend's motions to dismiss, arguing that, "[a]t this stage, McConnell and CS&L need only allege that CS&L is covered as an insured under the policy," and that both McConnell's petition and CS&L's cross-claims had done so. In their motion, McConnell and CS&L acknowledged that neither had alleged that CS&L was a named insured under West Bend's policy but argued that that fact did not preclude them from seeking relief against West Bend. McConnell and CS&L alleged that "[a]n insurance company will often agree to defend and indemnify people besides the person who signed or purchased the insurance or besides people who are listed as the

---

[2] Section 379.200 allows a judgment creditor to obtain insurance money directly from the insurer of the party against whom the judgment was obtained in satisfaction of the judgment. *Baker v. Weaver-Baker*, 550 S.W.3d 125, 129 (Mo. App. W.D. 2018).

3

named insured," and that "[t]he policy or agreement will often identify other non-signatories by class and agree to protect them." They then relied on the following allegations from the petition and cross-claims:

> 1) West Bend waived its right to contest whether or not CS&L is an insured under the policy by offering a defense to CS&L; 2) Vangard and CS&L entered into an oral insured contract in which Vangard agreed to indemnify CS&L and that's covered under Coverage A of the policy; and 3) West Bend's Coverage D ([West] Bend's Detective/Security Guard Endorsement) section provides coverage.

West Bend countered that the allegations all amounted to mere legal conclusions that were insufficient to support the claims. The trial court entered judgments dismissing, with prejudice, both McConnell's and CS&L's claims against West Bend. McConnell and CS&L filed a motion seeking clarification of the dismissals, wherein they sought either an opportunity to amend or for the court to amend the judgments under Rule 74.01(b) to indicate there was no just reason for delay so that McConnell and CS&L could immediately appeal the dismissals, despite the fact that the underlying case remained ongoing with other defendants. The trial court entered amended judgments, indicating there was no just reason for delay. McConnell and CS&L appeal.

## Jurisdiction

"Although neither party raised an issue concerning our appellate jurisdiction, 'the Court has an obligation, acting *sua sponte* if necessary, to determine its authority to hear the appeals that come before it.'" *Maly Commercial Realty, Inc. v. Maher*, 582 S.W.3d 905, 910 (Mo. App. W.D. 2019) (quoting *Glasgow Sch. Dist. v. Howard Cty. Coroner*, 572 S.W.3d 543, 547 (Mo. App. W.D. 2019)). If we lack appellate jurisdiction, the appeal must be dismissed. *Glasgow Sch. Dist.*, 572 S.W.3d at 548. As noted in our recent decision in *Butala v. Curators of Univ. of Mo.*, WD 82810, 2020 WL 1433401, at *2 (Mo. App. W.D. Mar. 24, 2020), "the Missouri Supreme Court in *Wilson v. City of St. Louis*, No. SC97544, —— S.W.3d ——, 2020 WL 203137 (Mo. banc Jan. 14, 2020),

4

clarified the analysis of what rulings of trial courts constitute 'judgments' and, of those rulings, which are 'final' for purposes of appeal."

"The right to appeal is purely statutory and, where a statute does not give a right to appeal, no right exists." *Wilson*, 2020 WL 203137 at *3 (quoting *First Nat'l Bank of Dieterich v. Pointe Royale Prop. Owners' Ass'n, Inc.*, 515 S.W.3d 219, 221 (Mo. banc 2017)). "Although many statutes govern 'the right to appeal, the only statute even potentially applicable to the present case is section 512.020(5),' which provides that 'final judgments' are appealable." *Id.* (quoting *First Nat'l Bank of Dieterich*, 515 S.W.3d at 221).

"For purposes of section 512.020(5), a 'final judgment' must satisfy two criteria: (1) 'it must be a judgment (*i.e.*, it must fully resolve at least one claim in a lawsuit and establish all the rights and liabilities of the parties with respect to that claim)'; *and* (2) 'it must be "final," either because it disposes of all claims (or the last claim) in a lawsuit, or because it has been certified for immediate appeal pursuant to Rule 74.01(b).'" *Butala*, 2020 WL 1433401 at *2 (quoting *Wilson*, 2020 WL 203137 at *5). "A judgment is eligible to be certified under Rule 74.01(b) only if it disposes of a 'judicial unit' of claims, meaning it: (a) disposes of all claims by or against at least one party, or (b) it disposes of one or more claims that are sufficiently distinct from the claims that remain pending in the circuit court." *Wilson*, 2020 WL 203137 at *5. "Determining whether these criteria are met is a question of law and depends on 'the content, substance, and effect of the order,' not the circuit court's designation." *Id.* (quoting *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997)).

Here, McConnell and CS&L appeal from the court's order granting West Bend's motion to dismiss their claims against it. Though the trial court, pursuant to McConnell and CS&L's request, amended the order to denominate it a judgment and indicate that there was "no just reason

for delay," both McConnell and CS&L still have the same nominal claims pending against other parties below. At first blush, our decision in *Butala* appears to require we dismiss this case for lack of a final judgment, given that McConnell still has equitable garnishment claims pending against CS&L and Covington, and CS&L has claims for bad faith and breach of the duty to defend pending against Covington and another insurer. *See Butala*, 2020 WL 1433401 at *1 (dismissing the appeal for lack of a final judgment where the same claim that was dismissed as to the respondents remained pending against other defendants in the trial court). But, upon closer inspection, we find *Butala* distinguishable.

The claim at issue in *Butala* was a Missouri Merchandising Practices Act claim, alleging "misleading advertisements about joint surgery" made by the individual physicians working for the Mizzou BioJoint Center and the Curators of the University of Missouri as the governing body of the University of Missouri with whom the Mizzou BioJoint Center was affiliated. *Id*. The petition in *Butala* alleged that "the defendants marketed and performed a surgical procedure using osteochondral allografts, a combination of bone and cartilage tissue taken from the joint of a deceased donor, implanted into multiple compartments and opposing surfaces of the knee joint in a single procedure." *Id*. According to the petition, "[t]his procedure was advertised and marketed as Mizzou BioJoint Surgery, a viable alternative to artificial joint replacement surgery and equally as successful." *Id*. The petition further alleged that "The Mizzou BioJoint Surgery performed on each of the [plaintiffs] ultimately failed," resulting in damages. *Id*.

After analyzing the Supreme Court's decision in *Wilson*, this court examined the allegations in *Butala* and determined that "every set of facts that are relevant to any claim or claims against Curators are also relevant to the identical claim or claims that are made against the individual defendant doctors—who remain subject to liability for such claim or claims in the

6

pending litigation." *Id*. at \*3. As a result, we determined that "the purported judgments of dismissal as to Curators ha[d] not 'fully resolved' at least one claim in a lawsuit nor established 'all the rights and liabilities of the parties with respect to that claim.'" *Id*.

Here, unlike in *Butala*, the claims that remain pending against other parties below are only *nominally* the same claims as those asserted against West Bend. But they are *not* based upon the same facts and circumstances. Each of the claims at issue (equitable garnishment, bad faith, and breach of the duty to defend) arise from contractual relationships. But, as will be discussed in more detail below, the contracts at issue are not the same contracts. West Bend issued its own insurance contract that was separate and distinct from the insurance contracts issued by Covington and the other insurer, which was also distinct from the alleged oral contract between CS&L and Vangard. At issue in the dismissals below was whether West Bend's contract provided coverage to CS&L. Based upon the allegations in the petitions, the terms of the other contracts were not at issue in the claims against West Bend. Therefore, the pending claims, unlike those in *Butala*, are not based on the same facts as the dismissed claims, and we are not required to dismiss this appeal for lack of appellate jurisdiction.

**Standard of Review**

All three points on appeal challenge the propriety of the trial court's dismissal of McConnell and CS&L's claims. "Appellate courts review 'a trial court's grant of a motion to dismiss . . . de novo.'" *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019) (quoting *Ward v. W. Cty. Motor Co., Inc.*, 403 S.W.3d 82, 84 (Mo. banc 2013)). "A motion to dismiss for failure to state a claim on which relief can be granted is an attack on the plaintiff's pleadings." *Id*. (quoting *In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. banc 2012)). "Such a motion is only a test of the sufficiency of the plaintiff's petition." *Id.* (quoting *In re T.Q.L.*,

7

386 S.W.3d at 139). "When considering whether a petition fails to state a claim upon which relief can be granted, [we] must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *Id*. (quoting *Bromwell v. Nixon*, 361 S.W.3d 393, 398 (Mo. banc 2012)). "The Court does not weigh the factual allegations to determine whether they are credible or persuasive." *Id.* (quoting *Bromwell*, 361 S.W.3d at 398). "Instead, [we] review[] the petition to determine if the facts alleged meet the elements of a recognized cause of action . . . ." *Id.* (quoting *Bromwell*, 361 S.W.3d at 398).

**Analysis**

Though McConnell and CS&L raise three points on appeal, all three points revolve around the same issue—whether the petition and cross-claims sufficiently alleged facts to support the claims asserted against West Bend. In response to all three claims, West Bend argues that both the petition and cross-claims failed to assert facts—as opposed to legal conclusions—supporting the necessary showing for each of the claims at issue—specifically, that CS&L is covered by West Bend's policy. We address all three points on appeal together.

### A. CS&L's coverage under West Bend's policy was a necessary element for each cause of action.

To determine the propriety of a dismissal for failure to state a claim, we must first consider the elements of each of the causes of action to determine what facts needed to be alleged in order to sufficiently state a claim. *See R.M.A. by Appleberry*, 568 S.W.3d at 425 (noting that a plaintiff must plead those facts that a jury must find in order to enter a verdict in the plaintiff's favor).

McConnell's petition sought equitable garnishment under § 379.200 against West Bend. To establish an equitable garnishment claim, judgment creditors must prove: (1) "that they obtained a judgment in their favor against [the] insured"; (2) "that [the insurer's] policies were in effect when the incident occurred"; and (3) "that [the insurer's] policies covered the damages

awarded in the [u]nderlying [j]udgment against [the insured]." *Kretsinger Real Estate Co. v. Amerisure Ins. Co.*, 498 S.W.3d 506, 510-11 (Mo. App. W.D. 2016). Accordingly, McConnell needed to allege: (1) that he had a judgment in his favor against CS&L; (2) that West Bend's policy was in effect when McConnell suffered his injuries; and (3) *that West Bend's policy covered the damages awarded against CS&L.*

CS&L's cross-claims alleged that West Bend acted in bad faith and violated the duty to defend CS&L. Both of these claims are premised upon the existence of a contract and are essentially claims involving a breach of contract.[3] "[T]o make a submissible case for breach of contract, the complaining party must establish the existence of a valid contract; the rights of plaintiff and *obligations of defendant under the contract*; a breach by defendant; and damages resulting from the breach." *Clayborne v. Enter. Leasing Co. of St. Louis, LLC*, 524 S.W.3d 101, 106 (Mo. App. E.D. 2017) (emphasis added).

As is evident from the case law cited above, all of the claims raised by McConnell and CS&L required factual allegations indicating that CS&L was covered by West Bend's policy in order to establish West Bend's potential liability and thereby state a claim upon which relief may be granted.

**B. Both McConnell and CS&L failed to allege sufficient facts to establish that CS&L was covered by West Bend's policy.**

In all three points, McConnell and CS&L argue that they alleged facts, rather than legal conclusions, indicating that CS&L was covered by the West Bend policy. We disagree.

---

[3] *See, e.g., Adams v. Certain Underwriters at Lloyd's of London*, 589 S.W.3d 15, 38 (Mo. App. E.D. 2019) ("Bad faith failure to defend is 'the intentional disregard of the financial interest of [the] insured in the hope of escaping the *responsibility imposed upon [the insurer] by its policy*.'" (quoting *Allen v. Bryers*, 512 S.W.3d 17, 39 (Mo. banc 2016)) (emphasis added)); *Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 191 (Mo. App. W.D. 2012) ("[W]here an insurer ha[s] no duty to defend or indemnify *under the insurance policy*, there cannot be a claim for vexatious refusal to defend or indemnify.").

"As is often said, Missouri is a fact-pleading state." *R.M.A. by Appleberry*, 568 S.W.3d at 425. And, though the facts that must be pleaded need not be evidentiary facts, they must, at a minimum, be ultimate facts. *Id*. "Ultimate facts are . . . issuable, constitutive, or traversable facts essential to the statement of the cause of action . . . ." *Musser v. Musser*, 221 S.W. 46, 50 (Mo. 1920). In other words, "[u]ltimate facts are those the jury must find to return a verdict for the plaintiff." *R.M.A. by Appleberry*, 568 S.W.3d at 425.

"[A]lthough we treat all of the *factual* allegations in a petition as true, and liberally grant to plaintiffs all reasonable inferences therefrom, '[c]onclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted.'" *Hendricks v. Curators of Univ. of Mo.*, 308 S.W.3d 740, 747 (Mo. App. W.D. 2010) (quoting *Willamette Indus., Inc. v. Clean Water Comm'n*, 34 S.W.3d 197, 200 (Mo. App. W.D. 2000)). "[I]t is axiomatic that legal conclusions cannot be pleaded as ultimate facts." *Musser*, 221 S.W. at 50.

Here, in response to West Bend's motions to dismiss, McConnell and CS&L acknowledged that they did not plead that CS&L was a named insured under West Bend's policy. They argued, however, that CS&L was covered by the policy and relied on the following allegations from the petition and cross-claims:[4]

1. West Bend waived its right to contest whether or not CS&L is an insured under the policy by offering a defense to CS&L;

2. Vangard and CS&L entered into an oral insured contract in which Vangard agreed to indemnify CS&L and that's covered under Coverage A of the policy; and

---

[4] McConnell's petition alleged solely that "West Bend issued a commercial lines insurance policy to Vangard . . . that provided insurance to Defendant CS&L for the subject incident and claims arising therefrom." It then directed the reader to the West Bend Policy, attached to the petition as Exhibit B. CS&L's cross-claims incorporated all of McConnell's allegations in the equitable garnishment petition by reference. Whether an insurance policy provides coverage to someone who is not a named insured is a legal question. *Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 36 n.2 (Mo. App. W.D. 2008). As such, a mere allegation that West Bend's policy provided insurance to CS&L amounts to a legal conclusion that cannot preclude dismissal.

10

3. West Bend's Coverage D ([West] Bend's Detective/Security Guard Endorsement) section provides coverage.

We will address each allegation in turn.

McConnell and CS&L first argue that CS&L was covered because West Bend waived any right to contest coverage by offering an unconditional defense to CS&L. There are two flaws in this argument: first, this allegation is nothing more than a legal conclusion, *Hendricks*, 308 S.W.3d at 747; and, second, it is legally incorrect. *Whitney v. Aetna Cas. & Sur. Co.*, 16 S.W.3d 729, 733-34 (Mo. App. E.D. 2000).

In *Hendricks*, the plaintiffs filed a petition seeking damages from the Curators of the University of Missouri, among others, for alleged negligence relating to medical care. *Hendricks*, 308 S.W.3d at 742. The trial court dismissed the petition for failure to state a claim upon which relief could be granted because the Curators were entitled to sovereign immunity. *Id*. On appeal, the plaintiffs argued that their petition pled that the Curators had waived sovereign immunity by virtue of a self-insurance plan that provided coverage for the plaintiffs' claims and that the trial court erred in failing to accept the truth of the allegation. *Id*. In addressing the propriety of the dismissal, this court rejected the plaintiffs' argument, noting that plaintiffs' allegation "that the defendants had waived their sovereign immunity because of the self-insurance plan was a legal conclusion that the circuit court was not required to accept as true." *Id*. at 747. The same is true here. The allegation that West Bend waived any right to challenge coverage is a mere legal conclusion that the trial court properly disregarded in ruling on West Bend's motions to dismiss.

Yet, even if the allegation were considered, it would not have precluded dismissal insofar as it is a legally erroneous conclusion. "[W]aiver and estoppel may not be employed to create coverage where it otherwise does not exist." *Whitney*, 16 S.W.3d at 733. "This rule is grounded

11

in the idea that waiver and estoppel do not themselves give a cause of action and that the purpose of estoppel is to preserve rights previously acquired but not to create new ones." *Id.* at 733-34. Thus, arguing that coverage is provided *because of* some waiver by West Bend is legally inaccurate, and the waiver allegation upon which McConnell and CS&L rely does not suffice to preclude dismissal.

The next allegation that McConnell and CS&L pointed to below was that "Vangard and CS&L entered into an oral insured contract in which Vangard agreed to indemnify CS&L and that's covered under Coverage A of the policy." To begin, this is not an accurate recitation of what was actually pled in either the petition or the cross-claims. Paragraph 7.a. of CS&L's cross-claims pled: "West Bend's policy provides coverage under Coverage A section because Vangard and C.S. & L entered into an oral contract in which Vangard provided security services to C.S. & L. This constitutes an insured contract under West Bend's policy." Notably, there was no mention in the cross-claims against West Bend that the oral contract between Vangard and CS&L contained any agreement pertaining to indemnity. Indeed, CS&L sought a legal conclusion in its third-party petition against Vangard that the oral contract referred to in the cross-claim against West Bend included either an implied or equitable indemnity provision. CS&L's third-party petition against Vangard, however, is still ongoing, and there has been no determination at this point as to whether the oral contract it had with Vangard included any indemnity provision. This is important because the alleged oral contract might constitute an "insured contract" under Coverage A of West Bend's policy only if it includes an agreement for indemnity. Until that legal question is resolved, there is no way that Coverage A would provide coverage for CS&L under the facts as pled. *See Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 80 (Mo. App.

12

W.D. 2005) ("[T]he duty to defend is distinctly different from the duty to indemnify. The issue of indemnification must await final resolution in court.").[5]

In any event, CS&L did not allege that it complied with any obligations imposed upon it under either the oral contract with Vangard or those outlined for indemnitees of Vangard in West Bend's policy.[6] These are necessary facts to support the legal conclusion that West Bend's policy provided coverage for CS&L.

The final allegation that McConnell and CS&L rely upon is that "West Bend's Coverage D ([West] Bend's Detective/Security Guard Endorsement) section provides coverage." This is the totality of the allegation pertaining to coverage under Coverage D. The remaining allegations with respect to Coverage D are efforts to show that none of the exclusions apply. But there are no facts alleged to establish *how* Coverage D applies to CS&L, who both McConnell and CS&L acknowledge is not the named insured. The bare allegation of coverage is plainly a legal conclusion, wholly lacking in supporting facts, and is insufficient to preclude dismissal.

In sum, none of the allegations made by either McConnell or CS&L, in either the petition or the cross-claims, provide sufficient factual support for the necessary claim that CS&L was covered under West Bend's policy with Vangard. Because the petitions failed to allege the necessary facts to support coverage, they failed to state a claim against West Bend. Therefore, the trial court did not err in dismissing the petition and cross-claims against West Bend. Points I, II, and III are denied.

---

[5] The fact that the oral contract between CS&L and Vangard is still awaiting legal determination does not affect our jurisdictional analysis because, contrary to their allegations on appeal, neither McConnell nor CS&L pled in their claims against West Bend that the oral contract contained an indemnity provision. Therefore, it is not a common fact between the claims against West Bend and those still pending.

[6] Under West Bend's policy, it agreed to defend an indemnitee of the insured pursuant to an "insured contract" under six very specific conditions, including multiple written agreements regarding cooperation and records authorization.

**Conclusion**

The trial court did not err in dismissing the petition and cross-claims against West Bend. The dismissals are affirmed.

_Karen King Mitchell_
Karen King Mitchell, Chief Judge

Thomas H. Newton and Lisa White Hardwick, Judges, concur.