

# In the Missouri Court of Appeals
## Eastern District
**DIVISION ONE**

| | | |
|---|---|---|
| ROBERT WAYNE, | ) | No. ED113127 |
| | ) | |
| Plaintiff/Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| | ) | 24SL-CC02739 |
| vs. | ) | |
| | ) | Honorable Richard Stewart |
| THE WASHINGTON UNIVERSITY | ) | |
| d/b/a WASHINGTON UNIVERSITY, | ) | |
| | ) | |
| Defendant/Respondent. | ) | Filed: July 15, 2025 |

Plaintiff, Robert Wayne, appeals the judgment entered by the Circuit Court of St. Louis County dismissing his petition against Defendant Washington University for violation of his rights pursuant to Missouri's Law Enforcement Officers' Bill of Rights, section 590.502 RSMo. (Supp. 2023).[1] Because the Law Enforcement Officers' Bill of Rights does not apply to private universities, such as Washington University, we affirm the trial court's judgment dismissing Plaintiff's petition.

## Factual and Procedural Background

Plaintiff worked as a police officer for the University from 2011 until 2023, and became commissioned as a peace officer through the St. Louis County Police Department.[2] On October

---

[1] References to section 590.502 are to RSMo. (Supp. 2023). All other statutory references are to RSMo. (2016).

[2] When not obviously referring to the Peace Officer Standards and Training Commission, the term "commission" as used in Chapter 590 means "a grant of authority to act as a peace officer." Section 590.010(1).

12, 2023, the University terminated Plaintiff's employment following several complaints against him and five resulting Internal Affairs investigations between June and September 2023.

Plaintiff filed suit against the University, claiming his investigation and due process rights pursuant to Missouri's Law Enforcement Officers' Bill of Rights, section 590.502, were violated. The allegations contained in Plaintiff's petition included that: the University is a Missouri benevolent corporation with its principal place of business in St. Louis County, Missouri; for purposes of the Law Enforcement Officers' Bill of Rights, the University police department is a law enforcement agency that must provide Plaintiff the rights afforded by the statute; and the "University police officers are peace officers commissioned through St. Louis County and employed by the University as government officials."

Plaintiff further alleged that the University violated his rights by failing to, among other things, provide copies of the complaints against him at least 24 hours prior to an investigation, conduct interviews while Plaintiff was on duty, provide written statements in support of the complaints, provide Plaintiff with a *Garrity* warning prior to questioning; and provide Plaintiff with a full due process hearing following termination of his employment.[3] Plaintiff sought a judgment voiding both the issuance of the written reprimand/final warning and the termination of his employment, ordering his immediate reinstatement, awarding lost wages from the date of termination to the date of reinstatement, ordering restoration of his retirement and other benefits, and awarding reasonable attorney's fees.

---

[3] "A *Garrity* warning is a statement intended to advise a *public* employee that any statements made or evidence obtained from any such statements which are required as a condition of continued employment can be used against the employee only in an investigation by the employer of such employee's performance of his or her public trust and cannot be used against the employee in a criminal prosecution. Such warning resulted from the decision in *Garrity v. New Jersey,* 385 U.S. 493 (1967) …." *Gardner v. Mo. State Highway Patrol Superintendent*, 901 S.W.2d 107, 110 n.1 (Mo. App. W.D. 1995) (internal citations omitted).

The University filed a motion to dismiss Plaintiff's petition, Plaintiff was allowed to amend his petition, and the University again filed a motion to dismiss for failure to state a claim upon which relief can be granted. The University argued the Law Enforcement Officers' Bill of Rights applies only to public entities and does not impose obligations on private universities. Without providing its reasoning, the trial court granted the University's motion to dismiss with prejudice. This appeal follows.

## Discussion

In three points on appeal, Plaintiff challenges the trial court's dismissal of his amended petition alleging that the University violated his rights pursuant to section 590.502, commonly referred to as Missouri's Law Enforcement Officers' Bill of Rights. For the sake of clarity, we consider Plaintiff's points out of order.

### Standard of Review

We review *de novo* the trial court's grant of a motion to dismiss. *Sullivan v. City of University City*, 677 S.W.3d 844, 847 (Mo. App. E.D. 2023). We will affirm the dismissal if it can be sustained on any grounds raised in the motion. *Id.* at 848. "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Id.* We assume the plaintiff's averments are true, and we liberally grant the plaintiff all reasonable inferences. *Id.* "A motion to dismiss for failure to state a claim assesses whether the petition alleged facts giving rise 'to a *cognizable cause of action* or of a cause that might be adopted.'" *Id.* (quoting *Graves v. Mo. Dep't of Corrections,* 630 S.W.3d 769, 772 (Mo. banc 2021)) (emphasis in original).

### The Law Enforcement Officers' Bill of Rights

The Law Enforcement Officers' Bill of Rights ("the LEOBOR") enumerates certain due process and other rights that law enforcement officers in Missouri possess when undergoing administrative investigation, administrative questioning, discipline, demotion, transfer, termination of employment, or placement on a status that could result in economic loss. Section 590.502. The statute also provides definitions and a remedy for its violation. *Id*. Only law enforcement officers as defined in the statute are entitled to the LEOBOR's protections. *See generally* 590.502. "Any aggrieved law enforcement officer or authorized representative may seek judicial enforcement of the requirements of this section." Section 590.502.9.

Subsection 590.502.1(5) defines a "law enforcement officer" for purposes of the LEOBOR:

> **"Law enforcement officer"**, any commissioned peace officer with the power to arrest for a violation of the criminal code who is employed by any unit of the state or any county, charter county, city, charter city, municipality, district, college, university, or any other political subdivision or is employed by the board of police commissioners as defined in chapter 84. Law enforcement officer shall not include any officer who is the highest ranking officer in the law enforcement agency.

Consequently, the definition of "law enforcement officer" is critical in determining which persons are encompassed within the parameters of the LEOBOR's protections.

*Point I*

In his first point, Plaintiff claims the trial court erred when it dismissed his amended petition because the LEOBOR's application is not limited to public colleges and universities. He argues the plain language of the LEOBOR establishes that it applies to all law enforcement officers employed by a university and the trial court's determination that it applied only to officers employed by public universities required the court to add language to the statute that alters legislative intent. We disagree.

4

Statutory interpretation is a matter of law that this Court reviews *de novo. Nexgen Silica, LLC v. Missouri Dep't of Natural Res.*, 677 S.W.3d 594, 601 (Mo. App. E.D. 2023). The primary rule of statutory interpretation is to give effect to the intent of the legislature as reflected in the plain language of the statute. *Kehlenbrink v. Dir. of Revenue*, 577 S.W.3d 798, 800 (Mo. banc 2019). We do not read words in a statute in isolation, but rather, we read them in the context of the statute to determine the words' plain and ordinary meaning. *Id*. When the statute's terms are plain and clear to a person of ordinary intelligence, the statute's language is clear and unambiguous, and the rules of statutory construction do not apply. *Id*. While in isolation a word may be susceptible to multiple meanings, we determine the plain meaning of a word from its usage in the context of the entire statute. *Holmes v. Steelman*, 624 S.W.3d 144, 152 (Mo. banc 2021). "A court cannot look at single, separate words in a statute and then apply to each a definition untethered from its context." *Id*. This, however, is precisely what Plaintiff urges us to do.

In relevant part, section 590.502.1(5) defines a "law enforcement officer" for purposes of the LEOBOR as "any commissioned peace officer … *who is employed by any unit of the state or any county, charter county, city, charter city, municipality, district, college, university, or any other political subdivision* or is *employed* by the board of police commissioners …." (emphasis added). In its definition of "law enforcement officer," the legislature chose to include commissioned peace officers with the power to arrest for criminal violations, and chose to limit coverage to those commissioned peace officers who are *employed* by certain enumerated entities. Section 590.502.1(5). Thus, the employer of a commissioned peace officer is vital to the question of whether the commissioned peace officer qualifies as a "law enforcement officer" as defined by the LEOBOR.

"We presume that the legislature intended that each word, clause, sentence, and provision of a statute have effect and should be given meaning." *Bolen v. Orchard Farm R-V Sch. Dist.*, 291 S.W.3d 747, 751 (Mo. App. E.D. 2009). Had the legislature intended the LEOBOR's protections to apply to any and all commissioned peace officers, regardless of employment, then the legislature would have said so, and would not have included limiting language.

In addition, the words "college" and "university" conclude a list of six purely public entities, namely any county, charter county, city, charter city, municipality, and district. Section 590.502.1(5). "College" and "university" then immediately precede the phrase "or any other political subdivision." *Id*. The phrase "or any other political subdivision" plainly means that all the nouns listed immediately preceding this phrase—county, charter county, city, charter city, municipality, district, college, university—are likewise political subdivisions. Thus, a plain reading reveals that the statute applies to public entities, namely political subdivisions of the State, including counties, cities, municipalities, districts, colleges, and universities.[4]

Plaintiff would have us insert the phrase "public and private" to modify the words "college" and "university" in the LEOBOR definition of "law enforcement officer." This we cannot do. Nothing in section 590.502.1(5) suggests that the legislature intended the term "law enforcement officer" to apply to those employed by a private college or private university when the legislature inserted "college" and "university" in the midst of a list of public entities, concluding with "any other political subdivision." In addition to reading words in the context of

---

[4] This Court's primary obligation is to ascertain the legislature's intent from the language used in the statute. *Wood v. Criminal Records Repository*, 668 S.W.3d 597, 599 (Mo. App. E.D. 2023). "We must interpret and apply the laws as the legislature writes them." *State v. Haynes*, 564 S.W.3d 780, 787 (Mo. App. E.D. 2018). "[A]ny argument as to the alleged unfairness of construction of a statute as written, the difficulty in obtaining relief occasioned by the wording of a statute, or the policy ramifications thereof should be addressed to the legislative and executive branches of government." *Id*. (quoting *State v. Fields*, 517 S.W.3d 549, 558 (Mo. App. E.D. 2016)). If the legislature actually intended for section 590.502 to apply to both public *and private* colleges and universities, then it is the role of the legislature to amend the statute to explicitly say so.

6

the statute to determine their plain and ordinary meaning, *Kehlenbrink*, 577 S.W.3d at 800, we decline to add provisions not plainly written in the law or necessarily implied from what is written, *Sullivan*, 677 S.W.3d at 848. We are obligated to examine the language used by the legislature, not to supply something the legislature omitted by adding language to the statute. *Id*.

Further, the definition of "peace officer" as used generally in Chapter 590 lends support to our interpretation. The term "peace officer" is defined as "a law enforcement officer *of the state or any political subdivision of the state* with the power of arrest for a violation of the criminal code or declared or deemed to be a peace officer by state statute[.]" Section 590.010(3) (emphasis added).

Based on the plain language of the LEOBOR, we deny Plaintiff's first point.

### *Point III*

In his third point, Plaintiff claims the trial court erred when it dismissed his amended petition because Plaintiff stated a claim entitling him to relief for violation of the LEOBOR. Plaintiff contends he alleged facts that established he was a law enforcement officer employed by a university (whether public or private) whose investigative and appeal rights were denied by the University, and the University's assertion of its private status—which required the use of additional extrinsic purported facts—cannot change the legal effect of those alleged facts.

As the University observed in its memorandum in support of its motion to dismiss, Plaintiff alleged in his first amended petition that the University is not a State actor but a "Missouri benevolent corporation" whose principal place of business is in St. Louis County, Missouri. A "benevolent corporation" is defined as "[a] nonprofit corporation; created for charitable rather than for business purposes." *Benevolent corporation*, Black's Law Dictionary (6th ed. 1990). Section 352.010 provides in relevant part that "[a]ny number of persons not less

7

than three, who shall have associated themselves by articles of agreement in writing, as a society, company, association or organization formed for benevolent, religious, scientific, fraternal-beneficial, or educational purposes, may be consolidated and united into a corporation." It is axiomatic that a "benevolent corporation" is not a public entity.

As discussed in Point I, the LEOBOR applies by its plain language only to public entities. The statute does not impose obligations on private institutions, such as the University, that Plaintiff's petition alleged is a "benevolent corporation" and thus by definition a private entity. Because Plaintiff's alleged cause of action rests solely on the LEOBOR and depends on its applicability to the University, Plaintiff fails to state a claim upon which relief can be granted. Plaintiff cannot seek to hold the University liable for noncompliance with a statute that is applicable on its face only to public entities while he avers that the University is something other than a public entity.

Accepting as true Plaintiff's allegation that the University is a Missouri benevolent corporation, the trial court appropriately determined that the University is a private institution to which the LEOBOR does not apply. We deny Plaintiff's third point.

*Point II*

In his second point, Plaintiff claims:

The Circuit Court abused its discretion when it denied [Plaintiff's] Motion for New Trial because [Plaintiff] alleged facts in his Amended Petition that (if accepted as true) establish that [the University] is a public university for purposes of the Bill of Rights. Even if the Bill of Rights applies only to public universities, [Plaintiff's] allegations establish that [the University] employs police officers that are an arm of the government with powers that render [the University] a public entity for purposes of the obligations imposed by the Bill of Rights.

A trial court's order denying a motion for new trial is not appealable. *Watson v. City of St. Peters*, 599 S.W.3d 479, 485 (Mo. App. E.D. 2020). While Plaintiff may not appeal the order

8

denying his motion for new trial, we typically will consider the issues raised as an appeal from the trial court's final judgment, and will review it as such. *Id.*

Plaintiff alleged in his petition that "Washington University Police Officers are peace officers commissioned through St. Louis County and employed by the University as government officials." He averred that "the University entered into a formal relationship with St. Louis County whereby the University's Police Officers are deputized members of the St. Louis County Police Department and provided the same powers and authority for law enforcement as commissioned St. Louis County Police Officers." Plaintiff continued, "[a]s such, the University Police Department is (for purposes of the LEOBOR) a law enforcement agency that must provide Plaintiff (and all of its other Police Officers) the rights afforded them by the LEOBOR."

He now contends his allegation that members of the University police department are government officials, if accepted as true, is sufficient to establish that the University has been rendered a public university for purposes of the LEOBOR: "Even if the Bill of Rights applies only to public universities, [Plaintiff's] allegations establish that [the University] employs police officers that are an arm of the government with powers that *render [the University] a public entity for purposes of the obligations imposed by the Bill of Rights*." We disagree.

The allegations contained in Plaintiff's petition included that the University is a Missouri benevolent corporation with its principal place of business in St. Louis County, Missouri; for purposes of the LEOBOR, the University police department is a law enforcement agency that must provide Plaintiff the rights afforded by the statute; and the "University police officers are peace officers commissioned through St. Louis County and employed by the University as government officials." Nowhere in his petition did Plaintiff allege that the University was thus rendered a public entity for purposes of the LEOBOR.

9

First, Plaintiff's assertion that the University police officers are "government officials" is itself a legal conclusion rather than a factual allegation. Second, even if Plaintiff had alleged in his petition that the University was rendered a public entity by virtue of its employment of "peace officers commissioned through St. Louis County," such an assertion would likewise constitute a legal conclusion, not a statement of fact. Such assertions could not be properly considered by the trial court as allegations of fact for purposes of determining whether Plaintiff's petition could survive the motion to dismiss. *McConnell v. West Bend Mut. Ins. Co.*, 606 S.W.3d 181, 190 (Mo. App. W.D. 2020). "[A]lthough we treat all of the *factual* allegations in a petition as true, and liberally grant to plaintiffs all reasonable inferences therefrom, '[c]onclusory allegations of fact and legal conclusions are not considered in determining whether a petition states a claim upon which relief can be granted.'" *Id.* (quoting *Hendricks v. Curators of Univ. of Mo.*, 308 S.W.3d 740, 747 (Mo. App. W.D. 2010)) (emphasis in original). It is axiomatic that a plaintiff cannot plead legal conclusions as ultimate facts to survive a motion to dismiss. *Id.*

We deny Plaintiff's second point.

Conclusion

Because the plain language of Missouri's Law Enforcement Officers' Bill of Rights, section 590.502, does not apply to private universities, such as Defendant Washington University, we affirm the trial court's judgment dismissing Plaintiff's petition for failure to state a claim upon which relief can be granted.

_____
Angela T. Quigless, J.

James M. Dowd, P.J., and
Craig K. Higgins, Sp.J., concur.